## JOSEPH E. YOUNG, JR.,

*vs.*

## JEAN GLASS YOUNG.

*Divorce—Desertion.*

By Code, Article 16, Section 38, a divorce *a mensa* may be granted for abandonment and desertion, without regard to duration. p. 85

Abandonment and desertion, to constitute a ground for divorce *a mensa,* must be the deliberate act of the party complained of, done with the intent that the marriage relation shall no longer exist. p. 85

The acts of a wife in leaving her husband and remaining away *held* not to be shown to have been done with the deliberate intent to finally terminate the marriage relation, so as to entitle the husband to a divorce *a mensa* on the ground of abandonment and desertion, it appearing that she left him because he refused to provide her with a home apart from his parents, as he had promised and was able to do, and that immediately after she left him he sent her a message that she could not return unless she did so by daylight and in the sight of all the neighbors.

p. 86

*Decided February 5th, 1920.*

Appeal from the Circuit Court for Washington County. In Equity. (HENDERSON, J.)

The cause was argued before BOYD, C. J., BRISCOE, BURKE, URNER and STOCKBRIDGE, JJ.

*Albert J. Long,* for the appellant.

*Omer T. Kaylor,* for the appellee, submitted the cause on brief.

BURKE, J., delivered the opinion of the Court:

The parties to this suit were married on the 6th day of October, 1917, and lived together at the home of the husband's parents until the 4th day of January, 1919, when the wife, without the knowledge or consent of the husband, left the home and went to the home of her sisters in Greencastle, Pennsylvania. On the 17th of January, 1919, she filed a bill for divorce *a mensa et thoro* in the Circuit Court for Washington County, charging in the bill that "her husband has treated her with great cruelty, harshness and brutality,. at one time striking her, and that his conduct became so intolerable that she was obliged to leave the house of his parents, where she had been residing since her marriage. On the 19th of March, 1919, the defendant answered the bill, denying the allegations of fact contained therein as to the grounds for the divorce, and on the same day he filed a cross bill against his wife for a divorce *a mensa* upon the grounds of abandonment and desertion. Answer and replication were filed, and the testimony was taken in open court. At the conclusion of the whole evidence the plaintiff filed a petition in the case in which she reaffirmed the matters and facts alleged in her bill of complaint, but stated that "she is unable at this time to procure sufficient evidence in support of said allegations and prayed the Court to dismiss the bill without prejudice. Her bill was accordingly dismissed without prejudice by an order of Court dated July 29th, 1919, and on the 16th of August it dismissed the cross-bill with costs to the defendant. From this order the husband has brought this appeal.

By Section 38, Article 16 of the Code, a divorce *a mensa* may be granted for abandonment and desertion without regard to duration. *Brown* v. *Brown,* 2 Md. Ch. 317.

Abandonment and desertion, to constitute a ground for divorce *a mensa,* must be the deliberate act of the party complained of, done with the intent that the marriage relation should no longer exist. *Etheridge* v. *Etheridge,* 126 Md. 11.

The testimony of the wife in support of her bill was not cor-roborated to the extent required by law to warrant the Court in granting the relief prayed for, but a careful examination of the evidence has satisfied us that she was very unhappy in the home of her husband's parents, and was anxious and ur-gent that he should provide a separate home or apartment for her. This is denied by the husband and his witnesses, who pictured such a state of contentment, satisfaction and do-mestic happiness on the part of the husband and wife as to induce the Court to ask one of the witnesses for the husband the following question: "She had it easier than any one else in Hagerstown? Answer. Yes, sir."

It is unnecessary to recapitulate the evidence in support of the husband's case upon this subject. It is so improbable that we do not regard it as sufficient to overcome the testi-mony of the wife that the conditions and surroundings in the home of his parents were uncongenial and caused her much unhappiness, and that the only reason she left was be-cause he failed to provide her with a separate home which he had promised to do and was able to do. He professed great love for his wife—she was kind and affectionate, and every one in the home loved her and had no complaint to make against her. During his examination, in answer to questions propounded by the Court, he said that he would not under any circumstances take her back. On the day fol-lowing that on which the wife left he went to the home of her sisters in Greencastle and was told that she was not there. He left a message that if she did not return that day, by daylight, in sight of all the neighbors, he was done with her and would never receive her. Such a humiliating con-dition would hardly be imposed by a loving husband upon an affectionate young wife, who, so far as the testimony shows, had never been guilty before going away of any serious of-fence. The wife overheard the conversation with her sister to which we have referred, and stated on the stand that "he came to take me back to his own home, but I would not go

back to his home. *I would have lived with him if he had taken me to housekeeping."*

Judge Henderson, who heard the testimony in the lower Court, states in his opinion that the evidence of the husband convinced him "that he either did not ever love his wife or he is glad to seize upon the first rash act of his young, and, perhaps, misguided wife, living under uncongenial conditions, to get rid of her." We agree with that conclusion.

During the testimony the wife, in response to questions by the Court, said she was not willing to live with her husband if he took her to housekeeping. She afterwards testified that she did not understand the questions of the Court, and said that she would have gone back and lived with him if he had taken her to housekeeping. The husband is able to provide a separate home for his wife, and it was not unreasonable, under the circumstances, that he should do so, and it was very natural for the wife to want a home of her own. If one is provided, as he promised, we are not at all satisfied that the wife would refuse to return. The evidence is not sufficient to show that the acts of the wife in leaving her husband and in remaining away, especially after the declarations of the husband as to the condition upon which she could return, were done with the deliberate intent to finally terminate the marriage relation, and, therefore, the decree of the lower Court will be affirmed.

*Decree affirmed, with costs.*