## ARTHUR R. HOFFHINES *vs.* KATHERINE S. HOFFHINES.

*Husband and Wife—Desertion—Choice of Domicile.*

To entitle a wife to a decree of permanent alimony, such facts must be alleged and proved as would entitle her to a decree of divorce either *a vinculo matrimonii* or *a mensa et thoro.* p. 352

That one treats his wife, without just cause, in such manner as to compel her to leave him, constitutes abandonment and desertion on his part. p. 353

As a general rule, the husband has the right to determine the domicile of himself and family, and the wife is compelled to accept as her domicile the place so selected and maintained by her husband. p. 357

A wife having left her husband for the reason that he, though financially able to do so, failed to provide an independent domicile, and required her to live with him in the home of his parents, which they had previously undertaken to do and which they had found unsatisfactory and uncongenial, and the husband not having made any effort to induce her to return, *held* that he, and not she, was guilty of desertion, and that she was entitled to alimony. pp. 357-360

*Decided July 22nd, 1924.*

Appeal from the Circuit Court No. 2 of Baltimore City (DUKE BOND, J.).

Bill by Katherine S. Hoffhines against Arthur R. Hoffhines for alimony, to which defendant filed a cross-bill for divorce. From a decree in favor of plaintiff, defendant appeals. Affirmed.

The cause was argued before PATTISON, URNER, ADKINS, OFFUTT, and DIGGES, JJ.

*George W. Cameron,* for the appellant.

*Lee I. Hecht* and *Webster C. Tall,* for the appellee.

DIGGES, J., delivered the opinion of the Court.

The appellant and appellee in this case are husband and wife. They were married September 23, 1922, in the city of Baltimore. After the marriage they went to live with the husband's parents at 109 Beechwood Avenue, Catonsville, Md., and remained there for about two months, until the latter part of November, 1922. On November 28th, 1922, they moved to and occupied a small three-room apartment at No. 811 North Charles Street, Baltimore, Md., said apartment having been leased for four months. On April 5, 1923, the appellee left the Charles Street apartment and went to live at her mother's home, No. 3118 Baker Street, Baltimore, and since that time they have not lived together as man and wife.

On August 2nd, 1923, the appellee filed in Circuit Court No. 2 of Baltimore City her bill of complaint against her husband alleging abandonment and desertion, and praying for alimony, both *pendente lite* and permanent, counsel fees and costs. Appellant answered the bill of complaint by denying its allegations as to desertion and abandonment and, on the same day, August 20th, 1923, filed his cross-bill, in which the cause of complaint is stated to be that the appellee without just cause, reason, or provocation therefor, abandoned and deserted him; and the prayer of the cross-bill is for a decree of divorce *a mensa et thoro* on that ground. By her answer the appellee denied the material averments of the cross-bill and asserted that the conduct of the appellant was the cause of their separation and their ceasing to live together.

Testimony was taken on behalf of the parties in support of their respective contentions, in open court. On November 2, 1923, the chancellor passed the following decree:

"This cause, standing for hearing and having been submitted, the counsel for the parties were heard and the proceedings read and considered:

"It is thereupon, this 2nd day of November, 1923, by the Circuit Court No. 2 of Baltimore City, adjudged, ordered

and decreed, that the bill of complaint of Katherine S. Hoffhines, for alimony, is sustained; and that the defendant, Arthur R. Hoffhines, shall pay to the complainant, Katherine S. Hoffhines, as alimony, the sum of forty dollars ($40.00) for the period from October 3, 1923, to November 3, 1923; and the further sum of seven dollars ($7.00) per week beginning November 3, 1923, and until the further order of this court.

"And it is further adjudged, ordered and decreed, that the cross-bill of Arthur R. Hoffhines vs. Katherine S. Hoffhines, for a divorce *a mensa et thoro,* be and the same is hereby dismissed.

"And it is further adjudged, ordered and decreed, that the defendant, Arthur R. Hoffhines, shall pay to the complainant, Katherine S. Hoffhines, the sum of. twenty-five dollars ($25.00) as a counsel fee for services of counsel in defending the proceedings in this court on the cross-bill filed herein by the said defendant.

"And it is further adjudged, ordered and decreed, that the defendant, Arthur R. Hoffhines, shall pay the court costs in this proceeding."

From this decree the husband, Arthur R. Hoffhines, has appealed.

To entitle a wife to a decree of permanent alimony, such facts must be alleged and proved as would entitle her to a decree of divorce either *a vinculo matrimonii* or *a mensa et thoro.* *Wallingsford* v. *Wallingsford,* 6 H. & J. 485; *Dumnock* v. *Dumnock,* 3 Md. Ch. 146; *Outlaw* v. *Outlaw,* 118 Md. 503; *Polley* v. *Polley,* 128 Md. 62.

In this case the alleged cause for divorce is the abandonment and desertion of the appellee by her husband, as stated in her bill of complaint. It is admitted that the physical separation was the act of the wife, but it is contended that the conduct of the husband toward the wife, and his treatment of her, constituted legal justification for the appellee's ceasing to live with him, and therefore the acts of legal abandonment and desertion were those of the appellant.

It requires no citation of authority to support the legal proposition that it is abandonment and desertion by the husband for him, without just cause, to treat his wife in such manner as to compel her to leave him. *Harding* v. *Harding,* 22 Md. 337; *Levering* v. *Levering,* 16 Md. 213; *Taylor* v. *Taylor,* 108 Md. 129; *Polley* v. *Polley, supra.*

The evidence in this case, while in some instances conflicting, is in the main uncontradicted, and shows that the parties had known each other for several years before their marriage, both being employed by the Standard Oil Company at its Baltimore branch; that immediately after the marriage they had lived at the home of the husband's parents, the understanding apparently being that they would try this arrangement, and if found satisfactory, they would remain, and if not, they would secure a home for themselves at some place in the City of Baltimore; that almost from the beginning of their residence with the husband's family there was evident friction, the wife telling her husband that while they were supposed to be boarding at his parents' home, she was, in fact, compelled to help with all the work of the household, including the washing and ironing; that she could do her own work but did not feel that she should have to assist in the work of the family, that she had no freedom of action, could not go anywhere, but had to do just as his people said; her husband agreed it would be better for them both to move in town and live by themselves; that they moved into the Charles Street apartment on November 28, 1922, they both having decided upon that location; that the lease of the apartment was for a period of four months and that the rent was $32.50 per month; that the husband was earning $125 per month, from the date of their marriage to the time of separation; $25 each month was allowed to be retained by the company by which he was employed, in accordance with a stock-purchasing plan which that company then had with its employees; that during the period they lived together, in addition to the cooking and general housework incident to the family, the wife had temporary employment, and from

November, 1922, to April, 1923, she earned the sum of $300, $200 of which was expended in the maintenance of the home; that the husband had a life insurance policy at the time of the marriage, by the terms of which his mother was the beneficiary; that some time in December, 1922, he was requested by his wife, the appellee, to change this policy so as to make her the beneficiary in place of his mother, which request was refused; that shortly before the expiration of the lease on the Charles Street apartment the appellant told his wife that he was not going to renew the lease because he could not afford it, and that they would have to return to his mother's to live, and told the landlady that he had given up the apartment and that she could show any prospective tenants to the apartment for the purpose of renting it to other parties; that during the period the appellee was employed her husband furnished very little for the support of the family; that the appellant repeatedly told his wife that they would have to return to his mother's to live and this conversation on one occasion occurred in the presence of the appellee's mother; that the appellee in reply told her husband that she was perfectly willing to live in one room by themselves but would not return to his parents' home.

With these conditions existing, the appellee, on April 5th, 1923, while her husband was at the office of his employer, left the Charles Street apartment, taking with her the articles of furniture belonging to herself, and removed to the home of her mother on Baker Street; that upon the husband's return to the apartment on the evening of April 5, 1923, and finding his wife away, he made no effort to inquire as to her whereabouts but went to the home of his parents and remained there after that date, never making any effort to see his wife or induce her to return; that on April 19th, 1923, the appellee wrote her husband the following letter:

"3118 Baker St., Balto., Md.
"April 19, 1923.
"Dear Arthur: As I repeatedly stated to you, I was and am perfectly willing to live with you as we should,

as man and wife, provided you provide a suitable place for me to live and trust me properly as your wife.

"I am willing to live with you any place that you provide, no matter how humble it be, but positively will not live with you at the home of your parents, as you know that was objectionable when we lived there when first married, and I am sure that conditions have not improved. If you do not provide a home for me as you should, then you must, as my husband, provide for me and send me an allowance each and every week.

"I expect to hear from you at once as to just what you propose doing, either a home where we can live as we should as man and wife, or assistance in the way of support to me, as your wife.

"Your wife,
"Katherine Sanford Hoffhines."

On April 20, 1923, the appellant replied to this letter as follows:

"109 Beechwood Ave., Catonsville, Md.,
"April 20, 1923.

"Dear Katherine: I am in receipt of your letter of the 19th inst., and have carefully noted your proposition contained therein, *i. e.,* your willingness to live any place, no matter how humble.

"It is utterly impossible at the present time for me to provide any place other than at my home. My mother joins me in this invitation.

"Yours very truly,
"A. R. Hoffhines."

This letter of the husband's was immediately replied to by the appellee as follows:

"3118 Baker St., Balto., Md.
April 21, 1923.

"Dear Arthur: Your letter of the 20th inst. in reply to mine of the 19th received. You should have known before you asked me to marry you whether or not you could support me.

"As I stated in my letter, I will not live at your mother's home, because that is most objectionable, and is not our home. As you continue to fail to provide a home for me, I understand that you must provide me with the necessities of life as your wife, and I shall expect you to send me a sufficient amount to live and clothe myself on at once, and regularly each week hereafter.

"Should I not have a favorable reply to this letter, then I will know that I must consult legal advice.

"Your wife,
"Katherine Sanford Hoffhines."

The husband's reply to this letter was as follows:

"April 23, 1923.

"Dear Katherine: Your letter of the 21st received, and in reply I wish to say again that a home with my mother is the very best that I am able to provide.

"Yours very truly,
"A. R. Hoffhines."

In addition to this correspondence, the testimony shows that after the separation of the parties they met each other on Lexington Street, the mother of the appellee being present on this occasion; that at this meeting the appellant refused to speak to the appellee, but told her mother that he and his wife would have to go to his parents' to live; that the wife then said in the presence of her mother that she would live in one room with him but would not live with his people, the husband's reply being that his parents' home was the place he would provide, that it was up to him to provide a home and that his wife had no say.

The evidence fails to show any friction occasioned by the mother of the appellee, but on the contrary indicates that the appellant and his mother-in-law were on the most friendly terms during the time in which he and his wife lived together. This is strongly indicated by the appellant's own testimony.

There is testimony by the appellant to the effect that the appellee had endeavored to induce him to leave her and give

her money for support, and that under such conditions she would be perfectly willing for him to leave, but that he would not agree to this unless his wife would sign a contract relieving him from the payment of alimony. On cross-examination, when pressed by appellee's counsel to specify the time and place when these propositions were made by his wife, he was unable to do so, further than claiming on one occasion his wife's mother was present. This testimony was emphatically contradicted by the appellee and her mother, and we are convinced that the testimony of the appellant in this regard is not reliable.

We have set out at some length the evidence in this case, as disclosed by a careful examination of the record, for the reason that it presents for the determination of this Court for the first time the direct question of whether a husband's failure to provide a home for his wife, other than with his parents, he being financially and otherwise able to provide a different place of abode, is sufficient cause to entitle a wife to refuse to accompany her husband to the home of his parents and justify her in leaving under such conditions.

Stating the proposition in a different form: When a husband is financially able to do so, does the law impose upon him the obligation of providing an independent home for himself and wife, and does his failure so to do justify the wife in refusing to live with him in the home of his parents?

The general rule, supported by the great weight of authority, is that the husband has the right to determine the domicile of himself and family, and that the wife is compelled to accept as her domicile the place so selected and maintained by her husband. This right is correlative with the husband's duty to provide for the support and maintenance of his wife and family, and if the wife refuses to accompany her husband and live with him in the home provided by him, without sufficient cause, hers is an act of desertion.

As stated in 19 *C. J.* 60: "When a husband has established a matrimonial domicile and makes a peremptory and

unconditional demand upon the wife to live with him there, her unjustified refusal to do so constitutes desertion." And in 9 *R. C. L.* 365, it is said: "As a general rule, the husband has a right to direct the affairs of his own house, and to determine the place of abode of the family, and it is generally the duty of the wife to submit to such determination, unless there is good reason for her refusal to do so. The determination of such matters must in the first instance and ordinarily be left to the husband, upon whom rests the legal duty to provide for his family as well as for himself. The refusal of the wife to accompany him in a change of domicile, unless such change is plainly unreasonable, constitutes desertion by her. The right which the husband exercises in the selection of the place of abode or domicile is not, however, an entirely arbitrary power. He must have due regard for the health, welfare, comfort, and peace of mind of his wife; and the change of domicile and offer to provide a new home must be *bona fide.*"

And again, in 19 *C. J.* 60, it is said: "A wife is not guilty of desertion in refusing to follow her husband to the place of abode selected by him if it has been chosen without reason and discretion."

Courts have consistently refrained from attempting to enunciate a hard and fast rule governing cases such as the one now under consideration, but rightly leave each case to be determined by its peculiar facts and circumstances.

The case now being considered, when stripped of all immaterial matters, resolves itself into a question of whether or not the appellee is legally justified in leaving her husband for the reason that he, being financially able, fails to provide an independent domicile and requires her to live in the home of his parents.

One of the strong incentives for marriage is the prospect and expectation by the newly married parties of establishing an independent home in which the husband and wife, each in their proper sphere, are supreme. This instinctive desire of home building should be encouraged and fostered, as upon

the foundation of independent and happy homes the stability and prosperity of a nation largely depends.

While, as stated, there is no decision of this Court directly upon this point, in the case of *Young* v. *Young,* 136 Md. 84, which was a case in which the wife had instituted proceedings for a divorce on the ground of cruelty and the husband filed a cross-bill on the ground of desertion, at the conclusion of the evidence, the plaintiff filed a petition stating that she was unable to procure sufficient evidence to support the allegations of her bill, and asked that it be dismissed without prejudice, which was done, and after a hearing the cross-bill of the husband was also dismissed and an appeal taken by him to this Court. In passing upon the questions presented in that case, this Court, speaking through Judge Burke, said: "The testimony of the wife in support of her bill was not corroborated to the extent required by law to warrant the court in granting the relief prayed for, but a careful examination of the evidence satisfies us that she was very unhappy in the home of her husband's parents and was anxious and urgent that he should provide a separate home or apartment for her. * * * The husband is able to provide a separate home for his wife, and it was not unreasonable under the circumstances that he should do so, and it was very natural for the wife to want a home of her own. If one is provided, as he promised, we are not at all satisfied that the wife would refuse to return."

In several cases cited in the foot-note of 19 *C. J.* 60 it was held: "A wife is not chargeable with desertion because she refuses to live at the home of her husband's relatives, especially where her living there is made unpleasant." And in *Marschak* v. *Marschak,* 115 Ark. 51, it was held that "a wife is not guilty of desertion for refusing to follow her husband to a place among his relatives who are unpleasant to her and who would interfere with her control of the home, at least if he was able to furnish a better one." In 9 *R. C. L.* 366, sec. 152, it is said: "It is the duty of the husband to furnish a home wherein the wife is free from

abuse, ill-treatment, and unwarranted interference from members of the household, and if such a home is not provided, a wife is justified in leaving, and not only is not guilty of desertion in so doing, but may charge the husband with constructive desertion."

It will be noted in this case that the parties had made the attempt to live happily in the home of the husband's parents and had signally failed to find that contentment and domestic peace to which the wife was entitled, so that in urging her to return to that same domicile the husband had no reason to suppose that her residence there would be any more congenial and satisfactory than it had previously proven to be.

If these young married people had not already made the experiment of living with the husband's parents and found it unsatisfactory and uncongenial, according to the testimony of the husband as well as the wife, or if, as a matter of fact, it was the only place which the husband could have provided as a home for himself and wife, this case would present a different aspect. The facts here are that the husband was earning sufficient to maintain an independent home, that in order to augment his income the wife had demonstrated her ability and willingness to earn an income independent of her husband and expend it in furnishing the home and supporting the family; that in addition, the proposition of the husband to live with his parents had been tried and had proved a failure. Under such conditions it is difficult to reach any other conclusion than that the husband, when he made these conditions, expected and believed that the wife would not accept them, and that it would result in her leaving him and going to the home of her mother. This conclusion is strengthened by the fact that when the appellant found his wife had left, it apparently was the result that he had intended, for he made no effort to induce her to return or even ascertain her whereabouts. This attitude of the husband is further demonstrated by his letters in reply to those written by his wife, in each of which he makes it a condition of their living together that their domicile be with his parents.

We do not decide that in every case the wife is justified in leaving her husband when the home provided is with his parents, as each case should be determined upon its own particular circumstances.

It will be seen from what we have said that we find no error in the decree appealed from, and same must be affirmed.

*Decree affirmed, with costs.*