## ESTELLA L. S. EWING *v.* CHARLES W. EWING.
### [No. 17, October Term, 1927.]

*Decided January 10th, 1928.*

The cause was argued before BOND, C. J., URNER, OFFUTT, DIGGES, and SLOAN, JJ.

*B. Harris Henderson,* for the appellant.

*Joseph .W. Starlings,* for the appellee.

BOND, C. J., delivered the opinion of the Court.

A wife appeals in this case from a decree granting a divorce *a mensa et thoro* to her husband on an original bill filed by him on the ground of desertion by her, and dismissing a cross-bill filed by the wife for similar relief to her, with alimony, because of desertion by the husband. The question is which deserted the other. The wife left a home in a house owned by the husband's parents and in which they

lived, but maintained by the husband, he supporting his parents, and the husband contends that this was without justification, and was desertion by her, while the wife contends that living in the same house with the parents was so unpleasant and difficult for her that she could not be required to do so, that her leaving was justified, and her husband's failure to give her another and separate home amounted to what has been termed constructive abandonment or desertion by him. She testified, moreover, that the husband had stated shortly after the marriage that, if it was found that the couple could not live with his mother and father, they would go elsewhere; and the husband denies that he said so, or could, in fact, support his parents and his wife in separate establishments. The trial court, after taking the evidence, referred the case to a master in chancery for a report on it, and the master reported that it failed to show any substantial difficulty in the way of the wife's living in the house with the husband's mother and father, and that the wife appeared to have been without justification for leaving; and the trial court concurred in that conclusion. There is no question of the propriety of the husband's treatment of the wife, and none of the adequacy of the support he gave her. The wife, through her counsel, expressly disclaimed raising any other question than that of the right of the husband to require his wife to live with him in the same home with his parents.

It has been recognized by this court that grave difficulties in the way of a wife's living in a home maintained by the husband's relatives may justify her leaving the home, and the husband may be guilty of desertion if in that situation he provides no other home for her. *Buckner v. Buckner,* 118 Md. 101, 113; *Young v. Young,* 136 Md. 84; *Hoffhines v. Hoffhines,* 146 Md. 350. But the difficulties must be grave. The husband is not required to maintain a home elsewhere if it is not practicable for him to do so. And if the wife without sufficient justification leaves a home properly maintained by him with his parents she, on her side, may be guilty of desertion. *Buckner v. Buckner, supra.* "The courts have naturally refrained from attempting to formulate a rule of

general application in such cases, but have acted upon the theory that each should be determined upon its own particular circumstances. * * * This court has consistently held that the law will not countenance the living apart of the husband and wife except for grave and weighty causes." *Buckner v. Buckner, supra,* 112; *Hoffhines v. Hoffhines, supra.*

Taking up, first, the undisputed facts in this case, the parties had been acquainted many years before their marriage. The wife had been married before, and had a child by that marriage about thirteen years old at the time of the hearing below. During seventeen or eighteen years before her second marriage she had visited the home of her second husband. His parents are now over seventy years of age, and except for very small amounts earned by the father the son was their sole support. And, of course, the law compels the son to contribute to their support as well as to that of his wife. Sections 87 and 91 of article 27 of the Code of 1924. The son did support both his parents and his wife, and also contributed at times to the expenses of the wife's child. He was a foreman in a printing and publishing establishment, on a regular salary of fifty dollars a week, with a share in profits of the business, which brought him from one to two dollars a week more. At the time of the marriage the wife and her daughter were living with her mother and father, and it was arranged that both the wife and daughter should live with the husband at his residence, but when the wife's father died a month later this was changed, and the child was left with its grandmother to keep her company.

The wife, in one part of her testimony, in explaining why she did not help in the housework outside of her bedroom, even when her mother-in-law was disabled, says she was a boarder at that house, but it is plain that she was not restricted in her freedom about the house as a boarder might be. She was not restrained in any way; regularly got up late in the morning, and spent about five days in the week, from ten or eleven in the morning to from four to six in the evening, at the house of her own mother and child. And

even at the latter house, where normal school students had rooms, the wife had no work to do, or, as she declares, never made a bed.

On the day of her leaving the husband's home, after three years of married life, there was no quarrel with the husband. He left her in bed in the morning with the usual greeting, and without any intimation of her leaving or of any difficulty. And, not long before the wife left the house, she, her mother-in-law, and two sisters-in-law who had come on a visit, were all quietly sewing together, and the mother-in-law put a hem in a skirt fixed over for the wife, and showed the wife how to make a slip for her little girl. Shortly before seven o'clock in the evening, the wife called the house on the telephone and asked for her husband, and, hearing he had not returned, called him at his place of work, and then told him she would not return to the house, and when he asked her the reason declined to answer over the telephone. On the next day, she returned for her clothing, and on that same day consulted an attorney; and a month later, at his dictation, wrote her husband a letter, copied from one reproduced in the report of the case of *Hoffhines v. Hoffhines*, 146 Md. 350, 355, which asserted that the home with the husband's parents was, as he knew, objectionable when the couple lived there when first married, that conditions had not improved, and, if he did not provide a home for her as he should, then he must, as her husband, provide for her and send her an allowance each and every week. So far the facts are undisputed. On the question of the relations of the wife and the husband's parents, however, the evidence is in conflict.

The wife alleges that her mother-in-law "nagged" and worried her with objections to the wife's actions in small things about the house, and that the father-in-law came home drunk, and by that subjected her to a nervous strain which her health would not stand. On behalf of the husband it was testified by himself, by his mother, and by his sisters, that there were never any quarrels or unpleasantnesses with

the wife, and that the father drank rarely and was quiet when he did. The three women testify to a completely quiet unruffled time on the morning of the day the wife left. The husband said his wife had only once, that he recalled, complained of living with his parents, and that was about six months before she left, when she said she wanted a separate home, and he explained that he could not provide it, adding that the house would (according to statements of his parents) be theirs in a few years, and he had quite a sum of money invested in it in repairs and upkeep. He says he had no intimation that she was unhappy or discontented, except that on a few occasions she complained of something said 'by the mother-in-law, but would not say what it was.

The wife and her mother join in saying that, in a short conversation he had with the mother at the time of the marriage, the husband volunteered the remark that if living at home with his parents did not suit the parties, he guessed he made money enough to rent a small apartment and, if that did not suit, they would try living with the wife's mother. The husband, as has been stated, denies having made such a statement, and contends that he could not have contemplated maintaining the two establishments.

In the wife's testimony, the nagging and complaining by the mother-in-law are said to have been frequent, relating to such matters as the wife's washing out small pieces of clothing in the kitchen on some days, using electricity for ironing them, ironing upstairs instead of downstairs, using one ironing board rather than another, and spending money on one or more articles of clothing. In reply, the mother-in-law testified to infrequent mention of such things during the three years, but said they were of quite different import, and trifling. About waxing floors, she says she remarked once only that she herself was too old to use waxed floors in her own room, and that the mention of the other matters was equally trivial, and consisted of ordinary suggestions of more convenient times or methods. And the mother-in-law tells of urging upon the wife that a nervous

condition in which the wife would often return in the evening was bad for her.

The wife contradicts the husband's statement that she spoke only once of a desire to have a separate home, and says she spoke of it four or five times. A physician testified that, during the three years of her marriage, she was in a highly developed nervous condition, which required treatment, and that he saw none of this after she left her husband's home. The husband did not go to the wife after she left, or make any effort to have her return, but, at a hearing on an earlier bill filed by her, in another proceeding, for an award of alimony alone, professed a readiness to have her come back to the same house. He declares now that he is no longer willing.

We agree with the trial court that this testimony falls short of showing that the husband's failure to provide for his wife a home other than the one he had with his parents amounts to desertion by him. The wife, in our opinion, had no such justification as the law can regard as sufficient for separation. The evidence as to the existence of the difficulties, the nagging and drunkenness, of which she now complains, is in conflict; a majority in number of witnesses deny it. The court below heard the testimony of all the witnesses from their own lips and could better judge of its weight. On the face of the record, to which we are confined on appeal, the husband's testimony seems straightforward and truthful. He quite frankly denied the existence of some facts which might have been favorable to him, and which his counsel seemed to think did exist. And, apart from the contradiction of the wife's testimony, the difficulties she recites are of a trivial sort. The nagging she complains of might be nagging or nothing at all, according to the humor of the narrator, and appears to be no more serious than might be expected in the course of three years between any two people living in the same house. And as to the father-in-law's drunkenness, the trial judge seems to us to have estimated that properly in saying: "If only the wife's testi-

money be accepted, and all contradictory and explanatory evidence ignored, the father-in-law's conduct did not justify the wife's leaving the husband; she is a woman at least thirty-three years old, twice married, and of sufficient maturity and experience not to have been made nervous by such conduct; on the other hand, if all the testimony on this matter is considered, the father-in-law's conduct complained of is not proven."

In the case of *Hoffhines v. Hoffhines, supra,* on which the wife here relies, severe restraints were put upon the wife in the house of her husband's parents, and her difficulties were much greater than those recited in the present case, assuming all the wife says here to be true. So great were the difficulties of the wife in the *Hoffhines* case that the couple abandoned that home because of them. The husband there was amply able to maintain a separate home; here it would have been a heavy burden and hardly practicable. And the facts in the *Hoffhines* case, as the court found, made it difficult to reach any other conclusion than that the husband insisted upon her returning to live with his parents for the very purpose of driving her to leave him. Here there was no restraint, and the difficulties which the wife describes are far from grave, and far from sufficient, we think, to justify her declining to continue in the home which the husband maintained to fulfill his double obligation to his wife and his parents together. The wife has ceased without sufficient justification to live with the husband at that home; in the letter she wrote him she declared that she positively would not live with him there, and must be supported elsewhere; and it appears that, after the wife entered her earlier suit for alimony, the husband before the trial judge offered to take her back, telling her the home was just the same as she left it, and she again refused. These facts, we think, sufficiently establish the fact of desertion by the wife averred by the husband in his bill.

*Decree affirmed, costs to be paid by the appellee.*