MARIE E. FOELLER *v.* ADAM H. FOELLER
[No. 1, January Term, 1937.]

*Decided February 12th, 1937.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, MITCHELL, SHEHAN, and JOHNSON JJ.

*Jacob E. Cohen,* submitting on brief, for the appellant.

*Sigmund R. Kallins,* for the appellee.

JOHNSON, J., delivered the opinion of the Court.

From a decree passed by the Circuit Court of Baltimore City, dismissing the bill of complaint of Marie E. Foeller against her husband, Adam H. Foeller, for a divorce *a mensa et thoro,* the wife prosecutes the appeal. The bill alleges that the husband, on many occasions previous to the filing of the bill, treated plaintiff with extreme cruelty, as a result of which she was twice compelled to leave him, and that finally he brought into their home his mother and sister, who have interfered with the marital relations of the parties and ultimately succeeded in alienating the defendant's affection for the plaintiff, and the defendant has refused to support or maintain her or supply her with funds for food, and ordered her to move from their home on North Highland Avenue, in Baltimore City. In his answer the defendant, in addition to denying the previous cruelties, also denied the material allegations of the bill with respect to improper conduct on the part of his mother and sister, and further denied he had refused to support or maintain the plaintiff and ordered her to leave their home.

Considerable testimony, mostly of the parties to the suit, was taken orally before the chancellor, from which these facts appear undisputed: The parties were married in August, 1927, at which time plaintiff was twenty-nine years of age, while the husband was two years younger. Each had been previously married and divorced. Shortly after their marriage, the husband lost his position and they lived at a shore near Baltimore, until he secured employment with the Baltimore Transfer Company, where he obtained promotions, as a result of which, for the past three years, he has earned $35.10 weekly. They established a home in the city, living at one time upon Aisquith Street, later on Bouldin Street, and still later upon Decker Street, finally purchasing under a rental agreement property on North Highland Avenue. The wife left their home in September, 1929, and remained away for ten days, at which time she lived on East Baltimore Street under the name of Mohr. She again left in November, 1931, and instituted suit for divorce against her husband, with the result that they became reconciled one month later and the proceedings were dismissed. Again, on November 4th, 1935, she left and on the same day filed the present bill of complaint. Since that time the parties have not lived together, and at the time of the hearing below the plaintiff resided with her sister on East Baltimore Street. While these facts are undisputed, a conflict does arise as to the occurrences which preceded the three separations. The wife charges that prior to the time she first left, her husband was neglectful in staying out late of evenings, and she thinks about one-half of those evenings were spent at his mother's, also that once, while at the table, the husband threw a bun at her and scalded her with hot coffee, while the husband insists that his work of evenings lasted regularly at that time until after 10 o'clock, and upon arrival at his home his wife would be gone out, making it necessary for him to warm over his food, after which he would at times drop around to his mother's, awaiting his wife's return. From his explanation, the incident concerning the coffee was entirely accidental, and

although neither he nor the wife was in fact injured thereby, each of them received approximately an equal amount of it upon the body or clothing.

On the occasion leading up to the second separation, she contends the husband threatened to hit her with a bottle and grabbed her by the shoulders and also bit her on the breast, while he explains this occurrence as having taken place one evening after they had retired, as a result of her refusing his advances. He denies having hurt her in the slightest or having intended to hurt her, and it is plain from the testimony of her physician that her skin had not been broken, and he could not say that the marks which she exhibited were made by teeth. All we understand from his testimony is that the wife was in a nervous condition, and according to the husband this was not at all unusual. The wife also places much reliance upon two amorous letters written by the husband shortly after the first separation, in which he pleaded that she return to the home, made statements that he himself was at fault, and made some reference to the mother, but if we were justified in holding upon the evidence in this record that these affairs actually took place as detailed by the wife, and this the husband flatly denies, also that they were sufficiently serious in their nature to justify a decree *a mensa et thoro,* and were sufficiently corroborated, the conclusion is inescapable that they were condoned. Therefore, they are unavailing to the plaintiff in this proceeding, unless the husband has since conducted himself in such an improper manner as to revive such offenses. 9 *R. C. L. "Divorce and Separation,"* par. 172; 19 *C.J. "Divorce,"* par. 192G; *Daiger v. Daiger,* 154 Md. 501, 140 A. 717; *Hilbert v. Hilbert,* 168 Md. 364, 372, 177 A. 914; *Singewald v. Singewald,* 165 Md. 136, 166 A. 441; *Wagner v. Wagner,* 130 Md. 346, 100 A. 364; *Duckett v. Duckett,* 143 Md. 551, 123 A. 55; *Schouler, Divorce* (6th Ed.) par. 1704.

And this brings us to a consideration of the events leading up to the third time Mrs. Foeller left the home, on November 4th, 1935. This home contained six rooms,

and appellant states that for two years after the second reconciliation the parties got along well together, but that the presence of the mother and her husband's sister therein, and their attitude toward her in her own home, made it so unpleasant that she could not longer live there; also that the husband had refused to supply her with money for food to live elsewhere; but the record shows that appellee's mother has lived in the home since 1933, in one of the back rooms upon the second floor, and went there only after her husband had died and she had lost her home; that she is now advanced in years and without property, and, although she has children other than appellee, these are daughters and are not in position, because of large families or financial difficulties, to care for her. Appellant now insists that she objected to the mother-in-law originally coming into the home, but this is emphatically denied by appellee, who states that he heard no complaint about it until about two weeks prior to the time of the last separation, when his wife suggested to him that, if his mother could live there, she saw no reason why her sister and her children could not do likewise, but appellee was unable to take on further responsibilities and so informed the wife. The husband testifies that h's mother never interfered with his wife and he heard no complaint concerning the presence of the mother until this time, after which he gave the mother two dollars with which to buy her own food and deducted this from the nine dollars weekly allowance he had previously made for the three of them. It seems undisputed that, two weeks before the wife left, the husband gave her the usual allowance for food, which she failed to purchase, telling him she had used the money to pay her physician, but took no receipt therefor. Accordingly, when the bills for that week became due, the husband borrowed some money and gave it to his mother, requesting that she buy food for the remainder of that week, and the following week his wife declined to take the money, telling the husband to give it to his mother, and, notwithstanding she states she did not take her meals there during that period, she

did sleep there with her husband. On Saturday, prior to leaving on Monday, she asked the husband for money with which to purchase stockings, and he states he positively did not have it, after having spent his entire week's wages, and this seems to have started a further argument, whereupon she told the husband, if his mother did not leave the house, she herself would leave, and he replied that if that was the way she felt about it, he supposed she would have to go, because he could not put his mother out, but the husband emphatically denies he told his wife to leave or wanted her to leave. Evidently, he budgeted his weekly earnings as carefully as he could, and attempted to live within his income, but he stated frankly at the hearing below that he could not turn the mother out of the home, in view of the fact that she had no place to live and nothing to live upon, but was desirous that the wife return to the home to live.

The ultimate question is presented as to whether under these circumstances the decree dismissing the bill was proper. In this state it has been uniformly held that, in order to entitle a party to a divorce of the character here sought upon any grounds contained in section 39 of article 16 of the Code, the causes of separation should be grave and weighty and such as to show that the duties of married life cannot be properly discharged. *Childs v. Childs,* 49 Md. 509, 514; *Hawkins v. Hawkins,* 65 Md. 104, 108, 3 A. 749; *Buckner v. Buckner,* 118 Md. 101, 113, 84 A. 156; *Young v. Young,* 136 Md. 84, 86, 110 A. 207; *McKane v. McKane,* 152 Md. 515, 518, 137 A. 288; *Short v. Short,* 151 Md. 444, 135 A. 176; *Brett v. Brett,* 169 Md. 704, 182 A. 305.

And in many recent decisions, this court has considered, in connection with applications for divorces *a mensa* upon the ground of abandonment and desertion, the effect of the presence of the husband's relatives in the home as tending to establish the charge, and while the decision in each case is controlled by its own particular facts, it has been generally held that the husband has the right to determine the domicile of himself and family, and the

wife is compelled to accept as her domicile the place so selected and maintained by the husband, and, at least so long as the presence of his relatives in the home places the wife under no restraint, but leaves her as mistress of the domicile, even though the presence of such relatives be distasteful and objectionable to her, this does not constitute abandonment and desertion, unless he is financially in position to provide a separate home for such relatives who are dependent upon him; and the Maryland decisions upon the subject seem to be in harmony with those throughout the country. *Buckner v. Buckner,* 118 Md. 101, 111 84 A. 156; *Young v. Young,* 136 Md. 84, 86, 110 A. 207; *Hoffhines v. Hoffhines,* 146 Md. 357, 126 A. 112; *Ewing v. Ewing,* 154 Md. 84, 140 A. 37. See, also, 19 *C. J.* page 60; 9 *R. C. L. "Divorce and Separation,"* sec. 152; Annotation, 38 *A. L. R.* 332; Annotation, 47 *A. L. R.* 681.

In this case the stay of the husband's sister in the home seems to have been only temporary, and he disclaimed any intention that she was to remain there permanently. Notwithstanding, it has not been shown that the conduct of the sister therein has caused appellant any serious inconvenience or embarrassment, and a careful reading of the testimony convinces us that the husband's mother has not been uncongenial to appellant, and moreover that it is a physical impossibility for appellee to provide a separate home for the mother. It may be unfortunate for her, as well as appellant, that she has no other place to live, but this of itself does not entitle appellant to the relief which she seeks, and when we consider that on two occasions before the mother had entered the home appellant left it, coupled with the further fact that on another occasion, while the husband admittedly was supporting her to the best of his ability, she went to the state's attorney's office and attempted to have him prosecuted for nonsupport, that when she finally left she gave no indication to the husband of her intention to do so, on which date she instituted these proceedings, are all matters calculated to cause a court of equity to doubt that the conduct

of her mother-in-law was in fact the cause of the last separation.

The decree of the chancellor refusing relief and dismissing appellant's bill was correct and must be affirmed.

*Decree affirmed, with costs to appellant.*