## RICHARD T. MILLER *v.* MARY E. MILLER

[No. 51, January Term, 1945.]

▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮

· *Decided June 14, 1945.*

▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮

The cause was argued before DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Walter L. Green,* with whom were *Green & Powers* and *Cornelius Whilen* on the brief, for the appellant.

*Robert W. McCullough* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Richard T. Miller, of Riverdale, a taxicab driver, appeals here from a decree of the Circuit Court for Prince George's County awarding his wife, Mary E. Miller, a divorce *a mensa et thoro* and the sum of $15 per week as alimony.

The parties were married in 1940. Each had been married before. In the summer of 1942 complainant left her husband for about one week; but he located her at the home of her first husband's sister at Triangle, Virginia, and persuaded her to return home. In the summer of 1943 she left again, this time for about two months,

going first to the home of her first husband's brother in Washington, and then to Triangle, Virginia; but again he followed her and brought her back. Complainant, admittedly nervous and dissatisfied, claims that she left her husband on account of her health. One of her chief complaints was that he drove his taxicab in Washington at night and he was not attentive to her. She also objected when he served as a special policeman for the town of Riverdale. At present she is visiting a married daughter in Washington. It appears that on July 8, 1944, she went to her daughter's home on Ninth Street to help her with her household work after she had sprained her ankle. Defendant, supposing she would remain only a few days, was provoked when he did not hear from her for a period of ten days. When she finally phoned on July 18 that she was ready to come home, he refused to call for her. The next six weeks brought no effort toward reconciliation; but about the first of September defendant called to see his wife, and took her out to dinner and a picture show, and before leaving her about 11 o'clock, she agreed to cook his Sunday dinner. In accordance with the agreement, he called for her on Sunday morning about 5 o'clock and took her home, and she prepared the dinner. That night they slept together. On Monday afternoon, however, he took her back in his taxicab to her daughter's home. Nothing further was heard from her until October 31, when she entered suit for divorce.

Since 1842, when the Legislature of Maryland conferred jurisdiction in all applications for divorce upon the courts of equity of this State, these courts have been empowered to decree divorces *a mensa et thoro* for the following causes: (1) cruelty of treatment, (2) excessively vicious conduct, and (3) abandonment and desertion. Acts of 1841, Ch. 262, Acts of 1872, Ch. 272, Acts of 1920, Ch. 574, Code 1939, Art. 16, Sec. 41. In the case before us complainant makes no allegation of cruelty of treatment or excessively vicious conduct. She charges that her husband deserted her on July 18 when he re-

fused to come for her. The matrimonial offense of abandonment and desertion contains two inherent elements: (1) the ending of cohabitation, and (2) the intention of the offending party to desert. *Miller v. Miller,* 153 Md. 213, 219, 138 A. 22; *Simmont v. Simmont,* 160 Md. 422, 425, 153 A. 665; *Timanus v. Timanus,* 177 Md. 686, 10 A. 2d 322; *Boyd v. Boyd,* 177 Md. 687, 11 A. 2d 461; *Dunnigan v. Dunnigan,* 182 Md. 47, 31 A. 2d 634. The intention, corresponding to the *animus non revertendi* in the law of domicil, must be definite that the marital relation shall no longer exist. 1 *Bishop, Marriage, Divorce and Separation,* Secs. 1662, 1663, 1702.

The law is now established in this State that any conduct of a husband which renders the marital relation intolerable and compels the wife to leave him may justify a divorce on the ground of constructive desertion, even though the conduct may not justify a divorce on the ground of cruelty. *Schwartz v. Schwartz,* 158 Md. 80, 90, 148 A. 259; *Singewald v. Singewald,* 165 Md. 136, 147, 166 A. 441; *Kruse v. Kruse,* 179 Md. 657, 663, 22 A. 2d 475; *Fischer v. Fischer,* 182 Md. 281, 34 A. 2d 455; *Hockman v. Hockman,* 184 Md. 473, 41 A. 2d 510; *Collins v. Collins,* 184 Md. 655, 42 A. 2d 680. But the law of Maryland does not countenance the separation of husband and wife for slight or trivial reasons, but only upon the clearest and most satisfactory proof of facts showing that it is impossible for the parties to discharge the duties of married life. *Levering v. Levering,* 16 Md. 213, 217; *Ewing v. Ewing,* 154 Md. 84, 140 A. 37; *Kline v. Kline,* 179 Md. 10, 15, 16 A. 2d 924. This doctrine applies with special force to divorces *a mensa et thoro.* Chief Judge Alvey said: "Public policy and morality alike condemn these judicial separations of husband and wife, except where it cannot be avoided; for, as it has been justly said, such separations throw the parties back upon society in the dangerous character of a wife without a husband and a husband without a wife." *Shutt v. Shutt,* 71 Md. 193, 197, 17 A. 1024, 1025. In more recent years, as the attitude of the public has become

more liberal toward divorced persons, we have recognized in Maryland that the difficulty and the responsibility of the duty cast upon equity courts to adjudge applications for divorce has increased, rather than diminished, because the law of this State remains substantially the same as it was enacted in 1842, while the people often overlook what the courts are bound to recognize, that the State, representing society as a whole, has a real and vital interest in avoiding dissolution of the marital relation except for grave and weighty causes. *Gellar v. Gellar,* 159 Md. 236, 241, 150 A. 717. Thus we hold that no misconduct of the husband will justify a wife in leaving him unless it is such as will make it impossible for her to continue cohabitation without loss of her safety, health or self-respect, or is such as will cause reasonable apprehension of bodily suffering. Marital indifference and neglect, use of vulgar and abusive language, and even occasional acts of violence, if not in such a manner and degree as to endanger the wife's personal security or health, are not sufficient to justify abandonment. *Porter v. Porter,* 168 Md. 296, 303, 177 A. 464.

In this case complainant failed to show that her husband was guilty of any misconduct justifying her in leaving him. She claims that he said in July that he would not let her come back. But the fact remains that he did take her back in September. Moreover, she admits that she returned home to get the rest of her clothes, for she had taken to Washington on July 8 only one extra dress and pair of shoes. It is quite evident that she was not anxious to stay home. The chancellor, however, accepted her version that her husband would not let her stay. Defendant emphatically denies that he ordered her to go. He declares that she packed her clothes without his knowledge, and he was unaware of her intention until he saw her clothes at the door. Since she wanted to go, he says, he did not plead with her to stay, but drove her back to Washington at her request. We see no reason to discredit his testimony. He swears that even now he will welcome her if she is willing to return, and that there is

no reason why she should not return. They both say they did not have sexual intercourse on the night of their reunion, but slept in the same bed and "were getting along all right that night." Complainant now says that she would have come home if her husband had not employed a housekeeper during her absence; but he explains that he is related to her by marriage, that she came with her young son, and after a few weeks she left when her husband sent for her. Even the chancellor acknowledged that the parties, who are in their fifties, are old enough to adjust their differences, and should do so, as they have done several times before. It is a fundamental doctrine of our law that the husband, as the head and support of his family, has the right to determine the domicil of his family, and it is the duty of the wife to accept the place selected and maintained by her husband, unless it would impair her health or safety or unreasonably interfere with her comfort, or there are circumstances amounting in law to a legal excuse justifying her in refusing the request. *Hoffhines v. Hoffhines,* 146 Md. 350, 358, 126 A. 112, 38 A. L. R. 332; *Schwartz v. Schwartz,* 158 Md. 80, 91, 148 A. 259. If a wife has no sufficient cause in law to justify her in leaving the domicil, she is guilty of desertion, and upon her rests the duty of making an offer of reconciliation, and if she makes no effort to resume marital relations, she is not entitled to a divorce. *Diamond v. Diamond,* 182 Md. 103, 32 A. 2d 376.

In order to constitute desertion as a ground for divorce there must be voluntary separation of one spouse from the other, or the refusal to renew a suspended cohabitation, without justification either in the wrongful conduct or the consent of the other. *Gill v. Gill,* 93 Md. 652, 49 A. 557; *Buckner v. Buckner,* 118 Md. 101, 113, 84 A. 156, Ann. Cas. 1914 B, 628; *Crumlick v. Crumlick,* 164 Md. 381, 165 A. 189; *Boyd v. Boyd,* 177 Md. 687, 11 A. 2d 461. Where a married couple, after having separated, continue the suspension of cohabitation by mutual consent, either express or implied, there is an absence of the

intent essential to warrant a divorce on the ground of desertion. *Antrim v. Antrim,* 169 Md. 418, 181 A. 741. The law excludes the possibility of an abandonment arising in a common consent, because a joint wrong could give no cause of complaint to either. *Melson v. Melson,* 151 Md. 196, 202, 134 A. 136, 138. Of course, the mere fact that a man, whose wife is dissatisfied and stubborn, finally accepts the inevitable and permits her to leave, after reasonable efforts to persuade her not to go, does not show that the separation was by mutual consent so as to bar his right to a divorce. *Miller v. Miller,* 178 Md. 12, 21, 11 A. 2d 630. However, if a married couple separate by mutual consent, and one of them afterwards seeks reconciliation in good faith, but the other refuses to return, then the refusal constitutes desertion from the time of the refusal. *Taylor v. Taylor,* 112 Md. 666, 674, 77 A. 133.

As complainant failed to prove her charge of constructive abandonment and desertion, we must reverse the decree granting her a divorce *a mensa et thoro* and ordering defendant to pay her alimony. We will, therefore, remand the case for the passage of a decree dismissing the bill of complaint. We affirm, however, that part of the decree which orders defendant to pay to complainant's solicitor a counsel fee of $75, in addition to his initial fee of $25.

> *Decree reversed in part and affirmed in part, and case remanded for the passage of a decree in accordance with this opinion, appellant to pay the costs.*