KIDWELL *v.* KIDWELL

[No. 154, October Term, 1947.]

*Decided May 26, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, and HENDERSON, JJ.

*Calvert K. Hartle* and *David W. Byron,* with whom was *E. Stuart Bushong* on the brief, for the appellant.

*D. Kenneth McLaughlin* for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

A husband appeals from a decree ordering him to pay permanent and temporary alimony to his wife, counsel fees to her solicitor and the costs of the proceedings. The appeal is not based upon the amounts awarded, although some contention is made that alimony *pendente lite* and counsel fees should not have been allowed. This, however, is interwoven with the general position of the appellant that the chancellor should have dismissed the bill, and it will be so treated here.

No divorce is asked by the wife, but in order to sustain her claim for alimony, her allegations and proof must be sufficient to justify a divorce, had one been requested. *Winkel v. Winkel,* 176 Md. 167, 4 A. 2d 128. We must, therefore, examine the record to see if this

requirement has been met. There is not much factual dispute, although the causes and implications are contested.

The parties were married in 1921, and had two children, a son now 25 years of age and a daughter, 21. The wife is now 46, the husband 48. They occupied separate rooms for several years before 1937, and have not had intercourse since that year. Each claims to have made the last advance and to have been repulsed by the other. One rejection seems to have been sufficient, and neither claims to have made further efforts. They continued to live in the same house, however, until January, 1945 when the husband went to a room in a house owned by him in another part of Hagerstown, and has lived there ever since. In his testimony he stated that he worked hard and could not stand arguments in the morning, "and then go to work on it". On cross-examination he said he left "because things were not going right; we did not get along". He also stated that the reason for his marital difficulties was his wife's refusal to have intercourse with him, and money. He said when he left he had not made up his mind definitely that he was leaving the household. He did not know that his mind was made up at any one specific time, "it crystallized as time went on." He also said his wife had told him to leave, and that finally he did. He said he might go back and live with his wife "if I were the boss of the household". The wife testified that if her husband would do what is right and come back into the house and live as husband and wife "that is all right with me".

The appellant seems to have paid considerable money for the support and education of his children, but he was not so free with his allowance to his wife. His income, after taxes, in 1937, was $3500, in 1938, $4100, in 1939, $4700, in 1940, $6400, in 1941, $9100, in 1945, $10,800, and in 1946, $12,400. He testified that in 1943 he paid $1400 for his wife's maintenance, in 1944, $1290, and in 1945, $1850. In this last year he put a new roof on the house and painted it. In 1946, he paid for her

$1200 and in 1947, $945. He paid insurance, interest on mortgage, taxes and bills for gas, fuel, oil, electricity, water, sewerage and general upkeep. In addition, he said he paid his wife the sum of $15 a week. She worked during the war years. She said she could not get along on $15 a week, that she and her husband owned the home property as tenants by the entireties, and that it had a mortgage against it of $2,000.

The above are the substantial points brought out in the testimony. There is much more evidence on a number of incidental points, including facts tending to show that the husband had been in the company of other women on evenings when he was supposed to be working. These facts, some of them corroborated by the children, but denied by the husband, very naturally caused discussion at home, and the husband blamed his wife's suspicions for much of the argument which made his home life unbearable to him and caused him to leave. The daughter said that her father offered her mother $5000, and the home property if she would get a divorce. He told the daughter his home life was unbearable. The son said the father had told him that he was tired and had no desire to come back. Both children said the father, and not the mother, was responsible for the situation at home.

We have recently had occasion to discuss and reaffirm the principle of law that a separation of husband and wife cannot be countenanced except for grave and weighty causes. To justify a husband in leaving his home and living elsewhere, conditions must be such that he cannot continue to live with his wife without loss of his health or his self-respect, or that there is reasonable apprehension of his undergoing bodily injury or suffering. *Bradshaw v. Bradshaw,* 189 Md. 322, 55 A. 2d 719. See also *Miller v. Miller,* 185 Md. 79, 42 A. 2d 915. The mere fact that after a husband leaves his home, a wife accepts support from him and makes no effort to get him to return, does not justify the conclusion that the separation has become voluntary. The duty of at-

618

tempting to effect a reconciliation under such circumstances is upon the deserting party, and not upon the one who is abandoned. *Miller v. Miller,* 178 Md. 12, 11 A. 2d 630.

There is nothing in the uncorroborated testimony of the husband which shows any justification for his leaving his home in 1945. He has made no effort, since then, to reestablish himself there. On the contrary, he says he is much happier where he is, and has made overtures to his wife for a divorce. The chancellor found that the cessation of intercourse, and the ultimate abandonment of the home were both caused by the husband and .not by the wife. We are not disposed from the record to disturb that conclusion. Even if we were doubtful about it (which we are not), we would not be justified, on account of mere doubts, in overruling the finding of a judge who saw and heard the witnesses. *Meyers v. Murphy,* 181 Md. 98, 28 A. 2d 861. The decree will, therefore, be affirmed.

*Decree affirmed with costs.*