### SCHOFER *v.* SCHOFER

[No. 25, October Term, 1948.]

*Decided December 8, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*J. Francis Ford* for the appellant.

*Meyer Reamer* for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Rose D. Schofer, appellant, from a decree of Circuit Court #2 of Baltimore City dismissing her bill of complaint against her husband, Meyer Schofer, appellee. She prayed a divorce *a mensa et thoro;* custody of their infant female children, one thirteen and the other eight years old; permanent alimony, support of their infant children; alimony *pendente lite;* counsel fee; and other and further relief.

The parties to this suit were married in York, Pennsylvania, in 1930. Since that time they have resided in Baltimore. The two children, born as a result of this marriage, reside with their parents in the same house. The parties have had more or less a turbulent married life, he accusing her at various times of intimacy with other men, and she claiming her husband has an ungovernable temper and has beaten her at various times. However, the parties lived together as man and wife in the same room until the night of April 5, 1947.

The parties are of the Jewish faith. During the Passover in April, 1947, the appellant claimed she had made great preparation for the observance of that season. On the first night of the Passover season, as had been the custom in the past, the husband spent the first evening with his father and mother and she and the children with her family. She claimed she had made extensive preparations for the evening meal on the second night when the customary ritual of the Seder is performed. She said she requested her husband to perform this ritual, which he refused to do, telling her is was necessary for him to make a business call. When the husband left the house his wife insisted on going with him and got in the car and her husband drove to his parents' home. After arriving there she said she proposed waiting for him in the car but the appellee attempted to forcibly eject her. He was unsuccessful and a fight resulted during which she says several blows were struck by each party. The appellant returned home on a streetcar. She said he arrived home that evening, after she had retired, came to the bedroom which had been occupied by the parties previously, removed his clothing to another room, and slept there. She said he told her he wanted her to get a divorce, as he had done on previous occasions. She further said he stated he did not intend to live with her any longer. It is admitted by both parties to this suit that they have not lived together as man and wife since before that evening, although occupying different rooms in the same house.

On the other hand, it appears that the husband is a hardworking, industrious man with an income of about $60.00 a week. He gave his wife $45.00 a week to pay for the food for the table, the maid, and other household expenses. He paid the telephone bill, the gas bill, the mortgage interest, taxes, and any charge accounts which his wife made against him, and was therefore heavily in debt. The Chancellor found the wife was "a rather expensive girl", wanted expensive things for her children and family and charged these to her husband and this had caused great friction in the family.

As to the evening of April 5, 1947, the appellee testified his wife asked him that morning whether he would spend the second evening of the Passover season with his family, which he agreed to do. He stated he arrived home from work about 6 P.M., found no one in the house, no preparation for the evening meal, and he waited until five minutes of seven. As he was leaving the house the appellant came in with the two children. He claimed she used foul language in the presence of the children and proceeded to prepare and serve dinner. During that meal he said the appellant continued to swear and curse and he finally left the table and announced he was going out. The appellant got in the automobile with him and he said when they arrived in front of his father's house, she objected to him leaving the car. When he tried to remove the ignition key she grabbed it and broke it off in the lock. He said she then cried and swore, became hysterical, struck him over the head with her pocketbook and broke his glasses. He said he held his wife's arm to prevent her from striking him but she broke loose, jumped out of the automobile and returned home by streetcar. He said he had considerable trouble in obtaining a mechanic to remove the broken key from the lock, and when he arrived home he went directly upstairs to the bedroom, shared by himself and his wife, and when he entered the room she called him a foul name and told him to get his clothes and get out. He said he has slept in another room ever since.

There is nothing to corroborate either the appellant or the appellee as to what happened the night of April 5, 1947. The Chancellor found what happened in the car that evening "was sort of a draw". The appellant places much stress upon a conversation which the appellee had with her brother after the separation. However, there appears nothing in this conversation to show the husband was responsible for the marital separation and that he was the deserting party. The charges of cruelty made by the wife against her husband previous to April 5, 1947, if true, are not proven. It is evident, if these acts occurred, these were condoned. Unless the charges made by her as to the occurrence on April 5, 1947, are proven, that condonation still exists and is not revoked. *Singewald v. Singewald,* 165 Md. 136, 140, 141, 166 A. 441; *Foeller v. Foeller,* 171 Md. 660, 663, 190 A. 221. We agree with the Chancellor that there is nothing to corroborate the wife's charges.

The wife in this case charges desertion by her husband. In order for the courts to grant a divorce for abandonment it is necessary for the injured party to prove, not only the ending of cohabitation, but also the offending party's intention to desert. *Lynch v. Lynch,* 33 Md. 328; *Taylor v. Taylor,* 112 Md. 666, 77 A. 133; *Oertel v. Oertel,* 145 Md. 177, 185, 125 A. 545; *Klein v. Klein,* 146 Md. 27, 125 A. 728; *Crumlick v. Crumlick,* 164 Md. 381, 165 A. 189; *Boyd v. Boyd,* 177 Md. 687, 11A. 2d 461; *Dunnigan v. Dunnigan,* 182 Md. 47, 31 A. 2d 634; *Miller v. Miller,* 191 Md. 396, 62 A. 2d 293. In this case, we are of opinion that neither the charges of cruelty nor abandonment are proven by the appellant.

The appellee testified that since April 5, 1947, he has made several attempts to become reconciled with his wife, but she has refused a reconciliation. She said on one occasion since April 5, 1947, he came into her room in the middle of the night, tried to have relations with her, and she had to fight her way out of bed. She admits, however, the second time he made an overture to her it was "a very peaceful one". It also appears the husband

made efforts, after the wife obtained counsel in this case, to become reconciled with her, but she has consistently refused.

Even if the husband left the wife without just cause, which we do not find in this case occurred, and repents and proposes to renew the cohabitation and the other spouse refuses, it constitutes desertion by the one refusing from the time of that refusal, provided the offer to return is made in good faith, free from improper qualifications and conditions, and is really intended to be carried out in accordance with the performance of the duties and obligations of marital cohabitation. *Wise v. Wise,* 159 Md. 596, 600, 152 A. 230; *Simmont v. Simmont,* 160 Md. 422, 432, 153 A. 665; *McClees v. McClees,* 162 Md. 70, 74, 75, 158 A. 349; *Kline v. Kline,* 169 Md. 708, 182 A. 329; *Pitts v. Pitts,* 181 Md. 182, 190, 29 A. 2d 300; *Zukerberg v. Zukerberg,* 188 Md. 428, 433-434, 53 A. 2d 20, 22; *Miller v. Miller, supra.*

The decree will be affirmed.

> *Decree affirmed, costs to be paid by the appellee.*