FLORENCE HUBBARD

*vs.*

WILLIAM J. HUBBARD, SENIOR.

*Divorce and Alimony : adultery ; not ground for divorce a mensa et thoro; abandonment and desertion ; what constitutes.*

A bill for a divorce *a mensa et thoro* and for alimony was filed by a wife on the ground of adultery, and abandonment and desertion by her husband, without just cause or excuse; the evidence showed that the separation was brought about and continued through the consent and wish of the wife, who refused to have her husband live with her unless he should discharge from his employ a bookkeeper, with whom the wife charged he had been having adulterous relations : the husband refused to discharge her, and left the complainant; there was no evidence to sustain the charge of infidelity made by the wife, and no evidence that the husband desired to permanently abandon his wife : *Held,* that the relief prayed should not be granted.

p. 622

As to the allegations of adultery contained in the bill, it was : *Held,* that they were not sustained by the evidence; and it was further *Held,* that :                         p. 622

Adultery can not be made the basis of a divorce *a mensa et thoro,* but only of a divorce *a vinculo matrimonii.*         p. 619

For a divorce *a mensa et thoro* to be granted under Article 16, section 38 of the Code, on the ground of abandonment and desertion, the complainant must show that the abandonment was the deliberate act of the party complained of, done with the intent that the marriage relation should no longer exist.   p. 620

Separation and intention to abandon must concur in order to constitute cause of divorce on the ground of abandonment; but they need not be identical in their commencement.

pp. 620-621

*Decided January 21st, 1916.*

Appeal from Circuit Court No. 2 of Baltimore City. (HEUISLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*James Fluegel,* for the appellant.

*E. L. Stinchcomb,* for the appellee.

CONSTABLE, J., delivered the opinion of the Court.

The appellant filed a bill against her husband asking for alimony, permanent and *pendente lite,* and counsel fees, but subsequently amended the bill by adding a prayer for a divorce *a mensa et thoro.*

The bill alleged as the grounds for relief, that the appellee had been guilty of audultery with one Pearl S. Mitchell in January, 1905, and before the filing of the bill, and that the appellant had not cohabited with him since the discovery; and that the appellee abandoned and deserted her without just cause or excuse. After hearing testimony in support of the bill and answer the lower Court passed a decree dismissing the bill, and from that decree this appeal was taken.

It is presumed the allegation charging adultery was inserted for whatever effect it might have upon the question of alimony, the relief sought before the amendment; for that charge, if proved, could not be the basis for a decree of divorce *a mensa et thoro* but only for a divorce *a vinculo matrimonii. Stewart* v. *Stewart,* 105 Md. 297. The testimony taken in support of this allegation, however, will be considered in whatever manner it bears upon the question of desertion.

We do not intend to reproduce a detailed account of the testimony, for no good purpose would be subserved by so doing, but to give, in the main, the conclusions we have arrived at from a careful reading of the same. The parties were married in 1891, and have lived in Baltimore continu-

ously since, where the appellee has been engaged in the business of oyster packing. In 1903 he took into his employment as bookkeeper, Pearl S. Mitchell, a young woman whose home was in Harford County. The oyster packing business was carried on in each year, from about the first of August until the first of the following May, when the business would be closed and Pearl Mitchell would return to her home, returning to work the following August. During the first few years of her employment Miss Mitchell visited a great deal at the home of the appellee, and was apparently upon terms of intimacy with the appellant. It was during one of these visits in 1906 that the only adulterous act is attempted to be proved and it is remarkable that the only testimony offered to prove it was that of the only child of the parties, a boy of about fourteen years of age at the time of the alleged occurrence. Notwithstanding the fact that the son testified that the appellant was present and saw just what he did yet not one word of testimony did she give upon the subject. The explanation of the occurrence given by Miss Mitchell, when called as a witness by the appellant, was convincing. The testimony of the only other two witnesses as to this charge was trivial and what they each observed once, occurred years ago. It was admitted by the appellant that she had as late as the year 1910 visited for several days at different times Miss Mitchell at her home in Harford County. If we were considering this testimony with a view to determining whether the charge was legally established so as to be the basis of a decree *a vinculo* we would not have to dismiss it because it did not measure up to the strict rule of proof required in cases of this character, as determined by a long line of cases in this State ending with *Thiess* v. *Thiess,* 124 Md. 292, but would not hesitate to pronounce the charge unfounded, from anything that appears in the record.

The parties continued to live together as man and wife continuously until December, 1913, when the appellant left the home of herself and husband and filed a few days later a bill, making the same charges as in the present one. By

agreement the appellee paid her ten dollars a week and a counsel fee to her solicitor. Before a hearing was had on that bill the parties had become reconciled, wholly through the efforts of the appellee, and he took up his abode in an apartment rented and occupied by her until they could get possession of one leased by him after the reconciliation. The reconciliation only lasted for ten days when he left her apartment and the present bill was thereafter filed.

Therefore, the question to be determined is, whether such a case has been made out as entitles the appellant to relief on the ground of the desertion of her by the appellee.

So often has this question been before this Court, and so consistent have been the decisions defining what is legal abandonment and desertion as to form a basis for a decree of divorce, that that must be regarded as finally settled. Taking one of the very latest, that of *Muller* v. *Muller,* 125 Md. 72, this Court, reiterating the many former decisions, said: "It is provided by Article 16, section 38 of the Code, that a divorce *a mensa et thoro* may be granted for abandonment and desertion. The ground upon which the divorce is asked being declared by the statute, it was necessary for the complainant to allege and prove statutory cause. Abandonment is the deliberate act of the party complained of, done with intent that the marriage relation should no longer exist. *Lynch* v. *Lynch,* 33 Md. 328; *Gill* v. *Gill,* 93 Md. 652; *Twigg* v. *Twigg,* 107 Md. 676; *Matthews* v. *Matthews,* 112 Md. 582. 'Desertion as a matrimonial offense is the voluntary separation of one of the married parties from the other, or the voluntary refusal to renew the suspended cohabitation, without justification, either in the consent, or the wrongful conduct of the other. Its inherent affirmative elements are two—cohabitation ended, and the other party's intention to desert.' *Bishop on Marriage and Divorce,* Vol. 1, Secs. 662-63. In all cases there must be an intention to abandon.

"Separation and intention to abandon must concur in order

to constitute cause of divorce on ground of abandonment; but they need not be identical in their commencement."

With the separation admitted, let us examine the testimony for the purpose of determining whether the facts show on abandonment "with intent that the marriage relation should no longer exist." And this intent, it has been said, being an intangible thing is sometimes difficult to solve.

It is admitted by both parties that the domestic difficulty is caused by the continued employment of Pearl Mitchell by the husband. The wife insisting upon her dismissal, the husband refusing. The record shows there has been more or less quarreling though not of such a character as to warrant a divorce upon the ground of cruelty of treatment, if that had been one of the allegations of the bill, the quarrels consistently being about this cause. And although the appellant admits that the reason she left her husband's home in December, 1913, was because of a quarrel over the girl, she yet gives no facts or circumstances upon which she bases her charge or suspicion. When he left her apartment in April, 1914, she again admits it was the result of a quarrel over the girl, and again she testifies to no facts or circumstances nor produces any testimony, other than that we have adverted to above and that occurring eight or nine years ago, in support of her allegation that the appellee is guilty of adultery. According to her testimony she told the appellee he would have to discharge the girl as he had promised to do when she agreed that he should come to her apartment to resume their married life, and upon his refusal told him she "would not be second choice." One of the witnesses for the appellant, present at the quarrel, testified that the appellant told the appellee: "Under those conditions (retaining the girl) we can not live under the same roof." The appellee testified the appellant said to him "I positively will not live with you, you take your clothes and get out." Whichever one was correct in quoting just what was said the night of the separation becomes immaterial, for the appellant on the witness stand said she was willing to have the appellee resume the marital state, provided he dismissed the girl.

Like after the first separation, the appellee has been endeavoring to have the appellant relent and take him back, but she refuses only with the same condition and he refuses to comply with that condition.

Applying the law, as we find it, to these facts, we are not able to say that the appellant has made out such a case, by the proof, that shows that the appellee's intention when he left her apartment, or since, was that the marriage relation should no longer exist. In fact his actions since the first separation show to the contrary that he wished it to continue. The facts justify the inference that he is ready at any time to return to his wife the moment she withdraws her condition based upon, as we must hold from the testimony, mere unsupported suspicion. In fact we hold that the condition she imposed was unjustified, and that the separation was brought about and continued through her will and practically her consent. It does seen strange that one could have such an apparent strong conviction on the question of her husband's marital dereliction, so strong indeed as to compel her to leave his home, unless he consented to give up the object of his supposed infatuation, and yet at the same time be unable to give any facts upon which that conviction was based, when it is alleged the improper conduct has covered a period of about ten years.

We are of the opinion, therefore, that there has not been shown an intention to abandon and desert and will affirm the ruling of the lower Court.

*Decree affirmed, with costs to the appellant.*

---

Dissenting opinion of PATTISON and URNER, JJ.:

As we understand the testimony in this case, it shows that the appellee's conduct was directly responsible for the separation which is the ground of his wife's suit for alimony. It is proven that he deliberately left the appellant because he was unwilling to comply with the condition she imposed that he dismiss from his service the bookkeeper, Miss Mitchell,

whose association with him had been the long-existing cause
of the marital infelicity which the record discloses. While
we concur in the view, expressed in the Court's opinion, that
the charge of adultery was not sustained by the evidence, yet
we think the proof reveals a degree of familiarity in the
relations between the appellee and Miss Mitchell which might
well excite the wife's distrust. On a previous occasion, in
December, 1913, the appellant left her husband and filed a
bill for divorce on the ground of his alleged adultery with
the person just named. In the following April the parties
became reconciled and reunited upon the distinct and positive
promise by the appellee that he would within a few weeks
permanently dismiss from his employment the woman whose
retention had caused his wife so much unhappiness. When
the reunion had continued about a week, the appellee in-
formed his wife that he intended to employ Miss Mitchell
as his bookkeeper for another year. According to the testi-
mony of a disinterested witness, who was present at the
interview, the appellee, in reply to his wife's protest against
the violation of his agreement not to keep Miss Mitchell in
his service, said, in substance, that he had only come back
to live with the appellant for a time in order to destroy her
case under the bill she had filed against him, adding, with
an oath, that now she would not get a cent, and stating that
he would take his clothes and go to his mother's. This was
followed by the separation which is the occasion of the pres-
ent suit. The appellant has testified to her willingness to
have her husband return to her at any time if he will sever
his relations with Miss Mitchell, but with that condition he
absolutely refuses to comply. The very persistency with
which he continues such an association, in preference to the
marital reunion to which it is the only obstacle, tends
strongly to confirm his wife's suspicions and to justify her
attitude. In our judgment she is entitled to alimony under
the circumstances of the case as developed by the testimony,
and we have, therefore, been unable to concur in the deci-
sion to the contrary.