# EDITH COLEMAN *v.* WILLIAM D. COLEMAN

[No. 88, October Term, 1946.]

*Decided March 20, 1947.*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Harry Yaffee* and *Anthony S. Frederico* for the appel-
lant.

*George W. Evans* and *Robert P. McGuinn* for the
appellee.

MARKELL, J., delivered the opinion of the Court.

On February 27, 1946 the husband (appellee) filed
a bill for divorce *a mensa,* alleging desertion by the wife
(appellant) on January 19, 1946. The wife answered
and on March 15, 1946 filed a cross-bill for divorce
*a mensa,* custody of their (then) nine year old child and
alimony, alleging desertion (by the husband by compel-
ling her to leave him) on January 19, 1946. Later the
wife struck out her prayer for divorce. On September
25, 1946, after hearing, the cross-bill was dismissed, the
husband was divorced *a mensa,* and the custody of the
child was given to the wife. From the decree of Septem-
ber 25, 1946 the wife has appealed.

In deciding this case the trial court said: "The testi-
mony is not very complete on either side, but I must
judge between the husband's story and the wife's story.
I am certain of only one thing, and that is that the wife
left the husband. That she admits and he asserts. It
seems to me that she has not proved any grounds suf-
ficient to justify that. * * * I just believe what he
says and do not believe what she says. If you want to
know the basis of the decision, that is it. I think his testi-
mony is more persuasive than hers." We agree that the

testimony is meagre; it is principally the testimony of the parties, largely contradictory. If this case is to be decided on the question of veracity of the parties, it is pre-eminently one in which we ought not lightly to depart from the conclusion of the trial judge, who saw and heard the witnesses. We must, however, in any event consider whether the husband's story of the wife's departure on January 19th, if believed, is controlling in view of undisputed facts before and after that date. In such consideration of the case we cannot wholly ignore the fact that the husband's story *is* contradicted by the wife in important respects.

The parties were married on September 19, 1935. They have one child, a girl ten years old. They lived on Wolfe Street on the first floor of a rented three-story house. The husband's mother, his sister and her husband live on the third floor. The second floor is "rented out" for $6 a week.

The wife is under care of a physician, whom she sees every week or two, and takes medicine regularly. The husband says, "As Johns Hopkins reports, my wife has been there since 1929 with a nervous heart, not a weak heart."

The husband says she "left" him twice before 1946, to visit her mother and family in Virginia in 1941 and 1944, and "has stayed down there as high as a month." He says, and she denies, that she "left" without telling him she was going.

The husband has worked as a rigger, for Bethlehem Steel, at Sparrows Point, for twelve years. He says (testifying in September, 1946), "lots of times my take home pay drops as low as $33 or $34 a week." "Maybe $35 or $37 is the best that I take home." On June 10, 1945, he made $76.05, less deductions leaving cash received, $57.67 for the week. In July, and again in August, 1945, his wife took him to the State's Attorney's office for non-support, and he was ordered, or agreed, to pay her, first $10 a week, then $7 plus $6 collected as rent for the second floor.

The first floor, where they lived, had heat from a gas range, a coal range, and, he says, "a coal oil stove part time." She says, she was "without heat for two weeks or more" before January 19, 1946, she "had only one bushel of coal since Christmas," she "had to burn the gas range, and when he got ready to take a bath he would cut that off, and light the hot water heater and go upstairs and sit down" in his mother's apartment. She says, he told her to get out, "to go where it was warm." He denies her story and says he bought coal and oil for her and she was "too lazy to go to the store and get her own oil" that he had bought for her. Each says the other had told him or her "to get out of the house." The trial judge says, "The conflict of testimony about the heating of the house is not conclusive."

Marital cohabitation last occurred in December, 1945, before Christmas.

On January 19, 1946, while the husband was at work, the wife left the house and went to her sister's, taking with her the child, a large single, or "three-quarter," bed, some cooking utensils, a small radio, a small table, the washing machine and some of her clothes. She says he sold her sewing machine.

Three or four days after she left, and several times, she came back for medicine and different things, and he gave her what she wanted, except a wash tub. Three or four days (she says) or three or four weeks (he says) after January 19th, he changed the locks so that she could not get into the house in his absence. After she left, he took his cousin in to sleep with him and pay part of the rent. On February 27th (she says) or in March (he says) she came back with the child and told him, "I came back home to stay." He said, "You came back home to stay? I don't see where you brought anything. Your home is where you have taken the furniture and clothing." He refused to let her stay, but put her out of the house. On that occasion there was a woman, said to be his cousin's "girl friend," in the house, on the bed.

The wife says, "I went to the house about seven o'clock and there was gloves and a woman's bag laying on the table and I taken up the bag and walked on into the room, and I said to the lady, 'Is this yours?' And she said, 'Yes.' And I said, 'Honey child, don't you know you are in my bed?' and she said, 'No.' I said, 'This is my apartment.' She said, 'I did not know that'." The woman was fully dressed, but her shoes were off. The cousin was upstairs. He came down later. The wife says she was not told, and did not ask, who the woman was. The wife says (referring to her husband), "When I got after him he said I was not going to stay, and I said, 'If she can stay here we can all stay here and sleep in the same bed.' He said, 'No, you are not. I am going to put you out'." The husband ascribes to his wife language less chaste than her version, but in other re-respects describes the occasion in substantially the same way. He says, "My cousin's friend was there. She was not lying in bed. She was sitting on the side of the bed reading a magazine, and my wife came in and stamped her feet and put her hands on her hips, and asked the girl—excuse me, your Honor, and said, 'What the hell are you doing setting on my damned bed,' and that was when I had to put her out of the house. I told her to leave. I had to go to a meeting, and she refused to leave, and I taken her by both hands and led her to the door, I did not strike her, just led her to the door."

Abandonment and desertion, as a ground for divorce *a mensa*, contain two inherent elements: First, cohabitation ended; and second, intention to desert. *Miller v. Miller*, 153 Md. 213, 219, 138 A. 22. These two elements need not be identical in their commencement. *Hubbard v. Hubbard*, 127 Md. 617, 620-621, 96 A. 860. As co-habitation in December, 1945, amounted to condonation of any previous marital offenses, and the bill was filed on February 27, 1946, and the cross-bill on March 15, 1946, evidence of conduct before December, 1945, or after the filing of the bill or the cross-bill respectively, is ad-

missible only as reflecting on intent—or on revival of condoned offenses. *Schwab v. Schwab,* 93 Md. 382, 49 A. 331, 52 L. R. A. 414; *Schwab v. Schwab,* 96 Md. 592, 54 A. 653, 94 Am. St. Rep. 598; *Wagner v. Wagner,* 130 Md. 346, 349, 350, 100 A. 364; *Kirkwood v. Kirkwood,* 165 Md. 547, 553, 170 A. 180. We find no substantial evidence of any condoned offenses. Two visits by a wife to her mother in ten years of married life hardly amount to desertion, even though the circumstances and the duration of the visits may indicate little consideration for the husband left behind. The husband likewise is not shown either to have committed any marital offense before December, 1945, or to have displayed much consideration for his wife. His counsel mentioned his "humble circumstances," but a Bethlehem shipyard warworker—and this particular one—should hardly need be reminded by the State's Attorney of his duty to support his wife and child.

If we accept the trial judge's conclusion that the wife has not sustained the burden of showing that she was forced to "leave" by the husband's failure to provide heat to keep her and the child warm in mid-winter, still the husband's story does not clearly show intent to desert on the wife's part. He made no effort to persuade her to return or stay on any of her visits to the house, but within six weeks of her departure filed his bill, and on her last visit actually put her out of the house. His story suggests a possibility that he may have missed the furniture and washing machine more than he missed his wife and child, and may have preferred to escape supporting her rather than have her and the child return.

We cannot adopt the husband's inversion of the maxim *mobilia sequuntur personam.* Even if he might hesitate to eject his cousin summarily into the night upon his wife's return, or might be unwilling to resume cohabitation, by husband, wife and child spending the night in one bed, his refusal to resume cohabitation and his ejection of his wife from the house were unqualified, and he expressed no willingness then or thereafter to have her return, with or without furniture.

We think, on the basis of the husband's story and the undisputed facts, that though neither party displayed marked conjugal kindness to the other, the husband's conduct amounted to desertion, which entitles the wife to a divorce *a mensa* or to alimony in lieu of such a divorce.

> *Decree affirmed as to custody of child and reversed and cause remanded for passage of a decree in accordance with this opinion, making allowance or allowances for support of wife and child; appellee to pay costs above and below.*