BENNETT *v.* BENNETT

[No. 115, October Term, 1950.]

*Decided March 16, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Edward L. Foster* for the appellant.

*Samuel F. Beach,* with whom was *Thomas M. Anderson* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Dr. Willard H. Bennett, of Bethesda, a physicist employed by the Government in the National Bureau of Standards, brought this suit against his wife, Dorothy

S. Bennett, of Chevy Chase, for an absolute divorce and custody of their minor children. He is appealing here from a decree dismissing his bill of complaint, awarding the custody of the children to defendant, and ordering him to pay $800 as counsel fee to the solicitors for defendant.

The parties were married in 1928 in Columbus, Ohio. At that time complainant was 24 years old and had received his Ph.D. degree, while his wife was only 16. The next two years they lived in Pasadena, where complainant taught at the California Institute of Technology. In 1930 they returned to Columbus, where complainant entered the faculty of Ohio State University. In 1941 he entered the military service, and was ordered to Boston in December, 1942. In the meantime the parties had purchased a home in Columbus, but in January, 1943, defendant moved with the children to Boston. In August, 1943, complainant was ordered overseas. His wife remained in Boston until he returned to this country in May, 1944. Pending his discharge from the Army, his wife returned with the children to Columbus. He rejoined his family there about six months later. In January, 1945, he entered the faculty of the University of Virginia. In April his wife sold their house in Columbus and came to Virginia. In Charlottesville they lived in an apartment until July, when they purchased a house.

In March, 1946, complainant secured his position in the Bureau of Standards, which pays a salary of $8,000 a year. His wife did not join him until September, after she had sold the house in Charlottesville. Complainant then rented a house in Chevy Chase for $2,100 a year. This was a more expensive house than he felt he could afford, but he and his family stayed there for a year until he could buy a house. It was during this year that discord developed. Complainant's principal resentment against his wife was that she was extravagant. In February, 1947, his wife had a physical examination and the physician found that she had a heart

condition. Shortly afterwards complainant informed her that he had consulted James C. Christopher, attorney, about applying for a divorce. Defendant conferred with Mr. Christopher with the hope of forestalling a suit, and he tried during the next several months to conciliate the husband and wife. They inspected several houses, but were unable to agree upon one. In July complainant entered into a contract to purchase the house at 5519 Lincoln Street in Bethesda. He told his wife to look at it. She did so, and found that it had only two bedrooms. She told her husband that she could not live there, declaring that it was unsuitable for a family of six. She said that three boys would have to occupy one room, and the grown daughter another, while she and her husband would have to sleep downstairs. She then testified: "I suggested that I would take the remaining sum of money which I had and invest it, but I wanted it to be held jointly, and that he refused, and that I would secure employment and help him fix it up and pay for it."

Notwithstanding his wife's urgent pleas, complainant warned her that he had received legal advice that if he bought a house which was the best he could afford, and his wife refused to live there, she would be guilty of desertion. Complainant obtained possession of the house in Bethesda on October 1, 1947. About a week later he told his wife that he was preparing to move there, and that he had arranged to have the movers haul the furniture, and that he was sending her a letter to that effect. On October 9 he mailed her a registered letter notifying her that he intended to move on October 14 and that it was up to her to decide whether she and the children would move to the home he was providing. He moved there on October 14 and has been residing there ever since. On April 20, 1949, he instituted the suit for divorce charging that his wife was guilty of desertion.

The Maryland divorce statute authorizes a decree of divorce *a vinculo matrimonii* when the court is satisfied by competent testimony that the party complained

against has abandoned the party complaining, and such abandonment has continued uninterruptedly for at least eighteen months, and is deliberate and final, and the separation of the parties is beyond any reasonable expectation of reconciliation. Code Supp. 1947, art. 16, § 40, as amended by Laws of 1949, c. 520. Abandonment as a ground for divorce means the unjustified separation of one spouse from the other with the deliberate intention of the offender to terminate the matrimonial relation. *Gill v. Gill,* 93 Md. 652, 654, 49 A. 557; *Muller v. Muller,* 125 Md. 72, 76, 93 A. 404; *Hubbard v. Hubbard,* 127 Md. 617, 620, 96 A. 860; *Klein v. Klein,* 146 Md. 27, 29, 125 A. 728; *Simmont v. Simmont,* 160 Md. 422, 425, 153 A. 665; *Dunnigan v. Dunnigan,* 182 Md. 47, 50, 31 A. 2d 634.

The doctrine is well established that the husband, being the head of the family and legally responsible for its support, has the right to choose and establish the domicile for himself and his wife, and when he provides a new domicile, his wife's refusal to follow him constitutes desertion, unless the change is plainly unreasonable. The husband cannot exercise this marital right arbitrarily, but must exercise the right with due regard for his wife's health, welfare and peace of mind. A wife is not obliged to follow her husband unless he requests her to do so and such request is made in good faith, and the change of domicile would not impair her health or safety or unreasonably interfere with her comfort. *Schwartz v. Schwartz,* 158 Md. 80, 91, 92, 148 A. 259.

In adopting this doctrine in Massachusetts, Chief Justice Knowlton said in *Franklin v. Franklin,* 190 Mass. 349, 77 N. E. 48, 4 L. R. A., N. S., 145: "We can conceive of a choice of a domicile so plainly unreasonable and improper, in reference to the health and welfare of the wife, that the selection of it, and an attempted enforcement of his general marital right to have her share it with him, would be extreme cruelty, such as would justify her in declining to accompany him or follow him to such a place of abode. His wife's marital right and his duty as a husband would come in conflict with the

exercise of his general right to choose his own domicile, if he attempted to exercise the right in such a way as would be utterly and grossly unreasonable because of the peril to her life and health, and perhaps because of her deprivation of other things essential to her welfare."

Some courts have applied the rule rather strictly against the wife who refused to follow the husband. For example, in *Roby v. Roby*, 10 Idaho 139, 77 P. 213, 215, where the husband established a home in a desolate mining region and his wife refused to follow him on the ground that it was not a fit place to live, the Idaho Supreme Court said that, while it was disagreeable in that region about five months in the year, when most of the travel was on snowshoes, and there were no schools, churches or theaters in the locality, yet it was no colder than at many other places in the State, and such conditions were not new to the pioneers of the West. The Court held that the husband was not guilty of desertion.

On the contrary, many courts have applied the rule liberally in favor of the wife. In *Powell v. Powell*, 29 Vt. 148, 150, where the wife refused to leave the State of New York to live with her husband in Vermont because his home was near his relatives, the Supreme Court of Vermont held that she was entitled to a divorce. In that case, however, an important consideration, which did not appear in the Idaho case, was the fear that the wife's health would be jeopardized. Chief Judge Redfield said that "it is not uncommon for the female relatives of the husband to create, intentionally or accidentally, disquietude in the mind of the wife, and thereby to destroy her comfort and health often," and that "any man who has proper tenderness and affection for his wife would certainly not require her to reside near his relatives if her peace of mind were thereby seriously disturbed."

The Maryland Court of Appeals has applied the rule liberally in favor of the wife. In *Hoffhines v. Hoffhines*, 146 Md. 350, 126 A. 112, 38 A. L. R. 332, where the husband refused to provide a home for his wife, although

he was able to do so, and wanted her to live with him in the home of his parents, but she refused to do so, because she had found it to be uncongenial and unsatisfactory, the Court decided that the husband, and not the wife, was guilty of desertion. In *Crouch v. Crouch,* 150 Md. 608, 133 A. 725, 727, 47 A. L. R. 681, where the husband insisted on keeping in his home a brother who had been a dangerous lunatic and who was liable to become dangerous again, the Court held that to force the wife to continue to live in his home under such circumstances would constitute cruelty, and that if the wife left the home, the husband would be guilty of constructive desertion. In that case the Court referred approvingly to the liberal Vermont rule that "A wife is not guilty of desertion for refusing to follow her husband to a place of abode selected by him which would impair her health or safety, or comfort, or to a place among his relatives who are unpleasant to her, and who would interfere with her control of the home, at least if he was able to furnish a better one."

We realize, of course, that the fact that a husband is poor and his salary is not sufficient to supply all of the wants and satisfy all of the tastes of his wife does not operate as an excuse for the wife's refusal to follow her husband. It is when the husband has failed to provide a suitable home for his wife in accordance with his means and fitted to her station in life that she is excused from following him. *Walker v. Laighton,* 31 N. H. 111.

In this case complainant contended that, while his salary from the Government is $8,000 a year, his net salary, after deductions for taxes, is only approximately $6,600. He claimed that he could not afford any residence better than that which he has bought. The chancellor reached the conclusion that the house in which complainant is living is inadequate for the family, and that he bought it with the ulterior motive of using his wife's refusal to follow him as a ground for divorce. We see no reason to reverse the chancellor's decision.

We are impressed by the fact that defendant followed her husband from Ohio to California, back to Ohio, then to Massachusetts, back to Ohio, then to Virginia, and finally to Maryland, and that she has reared four children and in addition has done clerical work from time to time during her married life. Complainant's conduct has not compared favorably with that of his wife. After they had been married nearly fifteen years, he committed adultery and begot an illegitimate son born in Minneapolis in November, 1943. In 1944 the mother of the illegitimate child died, and complainant was requested to come to Minneapolis for the child. In narrating these happenings defendant testified: "I suggested that he go get the child. The mother was dead. It was the second such occurrance in his life. I suggested he bring the child home and I would raise it as my own. He went to Minneapolis, and in about three days returned and said he didn't want to do it. Then he asked me not to divorce him, his career, his University professorship would be ruined, * * * and in the interest of his career and our four children I did nothing about it."

When defendant became worried and went to a doctor in 1947, her husband looked for a ground of divorce. When he informed his wife that he had consulted a lawyer, she went to the lawyer's office to try to prevent a separation. As an evidence of her good faith, she turned over to the lawyer a check for $500 to be used toward payment for a house that would accommodate the family adequately. While there may have been difficulty in finding an available residence at a moderate price in the suburban section of Washington, it seems reasonable to believe that complainant could have located some place within his means that would have had more than two bedrooms and would have satisfied his wife. Moreover, his wife swore that she was willing to seek employment to contribute toward the cost of a house that would be adequate for the family. In fact, she is now employed by the United States Tariff Commission.

The final blow came when defendant received the ultimatum by registered mail that he had arranged to move out some of the household furniture on October 14. We think it is apparent that complainant had been trying for some time to get rid of his wife, and that this was a scheme designed to accomplish that purpose. Where a husband leaves his wife with the avowed intention of bringing an action for divorce, and his conduct generally indicates that his request that she follow him is not made in good faith, she cannot be held guilty of desertion for refusing to follow him. *Walker v. Laighton*, 31 N. H. 111. We, therefore, affirm the action of the chancellor in refusing to grant complainant a divorce.

Complainant also suggested that the counsel fee of $800, which he was ordered to pay to the solicitors for defendant, is excessive. It has long been accepted in this State that in an action for divorce the chancellor has authority to order the husband to pay the counsel fee of his wife's solicitor, and the amount of the fee is governed by the circumstances of each case and rests in the sound discretion of the chancellor. The chancellor's discretion is subject to review by the Court of Appeals. When this case was argued on appeal, complainant's counsel did not discuss the amount of work done by defendant's solicitors, and did not give any specific reason to show why the fee was excessive. Complainant admitted that his net salary from the Government is approximately $6,600 a year, and there is nothing before us to show that the fee is excessive or that complainant is unable to pay it. While the amount of work varies in different cases, we mention that in *Daiger v. Daiger*, 154 Md. 501, 140 A. 717, where the husband's income was $6,000 a year, it was held that the allowance of a counsel fee of $1,000 to the wife's solicitor was reasonable and proper. As we have not found an abuse of discretion, we will not alter the amount of the fee.

The chancellor dismissed the bill of complaint, but granted the guardianship and custody of the minor chil-

dren to defendant, and further ordered that the question of the support and maintenance of the children be reserved for the further consideration of the court. The divorce statute empowers the court in any case in which the care and custody of the children of the parties forms a part of the relief prayed, whether a divorce is decreed or not, to order and direct who shall have the guardianship and custody of the children *pendente lite* or permanently, and be charged with their support and maintenance, and may at any time thereafter annul, vary or modify such order in relation to the children. Code 1939, art. 16, § 41, as amended by Laws of 1949, c. 370.

Complainant conceded at the trial of the case that his wife, although extravagant, is a "fit and proper person" to have the guardianship and custody of the children. No valid reason has been advanced to change the order as to the custody of the children. The bill of complaint should not have been dismissed, inasmuch as the question of the support and maintenance of the children was reserved for further consideration. The case will, therefore, be remanded for correction of the decree.

*Decree modified and case remanded, with*
*costs to appellee.*