MILLER *v.* MILLER

[No. 141, October Term, 1953.]

510

*Decided May 21, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Donald T. A. Fair,* with whom was *Joseph W. Spector* on the brief, for the appellant.

*Harry S. Swartzwelder, Jr.,* with whom was *Jacob Matz* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree dismissing a husband's bill for divorce on the ground of constructive desertion, filed in April, 1952, but allowed to remain dormant until October, 1953. The parties were married in 1936 and there are no children of the marriage. For about three years prior to the marriage, Mrs. Miller had been the appellant's housekeeper and looked after his two children by a former marriage, a boy and a girl aged, respectively, 17 and 13 at the time of the marriage. She had lived in the house, which he owned, with her daughter by a former marriage who had a retarded mind. He conducted a small jobbing business from a shop in the basement.

According to the testimony of the husband, supported in some particulars by his son and daughter, the wife, after the marriage, did not get along with her stepchildren and was always "nagging and fussing". About 1940, for no particular reason, she moved his things out of the front room they occupied into the back room where

the son slept, and moved her daughter into the front room. He testified that she has since refused to have marital relations with him, despite efforts on his part to "put the cards on the table and get things straightened out". He is still occuping the back room. She is still performing household duties. His daughter married and left the home about 1942; his son was in military service for 3 years and married in 1951. It was brought out in cross-examination that his children have a remainder interest in the premises, apparently by conveyance executed by the husband in 1950.

At the time the bill was filed in 1952, the husband was 65 years of age, the wife about 53. In 1951 he broke his hip in an automobile accident and was laid up for about 18 months. He complains that she neglected him during this period; that she refused to attend to his wants or cook for him unless paid for her services. However, it was brought out that her demand was only for money to run the household, which he could not supply and which was supplied by the son, who maintained the shop in the basement although he resided elsewhere. When he had sufficiently recovered, Mr. Miller obtained a job as a night watchman at a small salary.

The wife's version of the change of rooms was quite different. She testified that the children seemed to resent the marriage and made things difficult for her. However, it was not until 1945 that her husband moved to the back room, and she described the incident in detail. She testified that her stepdaughter had previously made an unfortunate marriage (she has since remarried) and had a child which was about 3 years old in 1945. A strange woman brought this child to Mrs. Miller, stating that the mother had disappeared. Mrs. Miller took care of the infant, but repeatedly complained to Mr. Miller that the mother should be found and compelled to care for her child. He refused to do anything about it, but their relations became so strained that finally, after about five months, he took the child away

in a rage. She testified that he declared he would have nothing more to do with her and moved all his belongings into the back room. Mr. Miller did not deny her story about the child, although he denied it had any connection with the separation which he maintained had occurred five years before. Nor did the stepdaughter deny it. She testified that at a time when she was separated from her then husband and he was in jail, she turned the child over to her father. She admitted that her stepmother cared for the child for several months, then her father boarded it out with a cousin. Apparently the stepdaughter has never since claimed the child. Mrs. Miller testified her husband never forgave her for her attitude, and has never since sought a resumption of marital relations although she was always willing to resume them.

The Chancellor, in a well-considered opinion, adopted the wife's version as having "greater probability and plausibility". We cannot find that he was clearly wrong. In matters of credibility the Chancellor's findings are entitled to great weight. *Reicher v. Reicher,* 196 Md. 494, 498, and cases cited. The appellant contends, however, that the Chancellor erroneously based his decision on the lapse of time before bringing suit and the insufficiency of the evidence to corroborate the husband. It is true that delay is not necessarily a bar to a suit for divorce, since the doctrines of limitations or laches are not strictly applicable. But it is an important circumstance in weighing the accuracy of recollection and the availability of proof, and may amount to acquiescence in the nature of implied consent or condonation. See *Gold v. Gold,* 191 Md. 533, where the question is fully discussed. In the instant case the marriage might properly be described as a marriage of convenience from the start, and there is no satisfactory evidence of protest or genuine effort at reconciliation on the husband's part over a period, according to his version, of some 13 years. The Chancellor referred to corroboration only to point out that the fact of occupying separate rooms, although cor-

roborated, would present no obstacle to marital relations, if desired, nor would it throw any light on the disputed issue as to which party was responsible for the initial change of rooms. He clearly stated that he accepted her testimony as to what occurred at that time.

The appellant complains that the Chancellor would not permit him to put on additional testimony in corroboration. The record shows that after the complainant, his son, his daughter and his brother-in-law had testified, the Court asked, "Is that all?" Counsel for the appellant replied: "Only some more corroborative testimony." The Court said: "I do not see any use in going into that", and proceeded to hear from the appellee. The appellant's counsel did not object, nor did he offer any testimony in rebuttal at the close of the defendant's case. We find no abuse of discretion under the circumstances.

*Decree affirmed, with costs.*