LURA J. LEWIS *v.* JOSEPH W. LEWIS

[No. 151, September Term, 1971.]

*Decided December 6, 1971.*

The cause was argued before MURPHY, C. J., and THOMPSON and CARTER, JJ.

*Earl E. Manges* for appellant.

*Gorman E. Getty,* with whom was *William R. Carscaden* on the brief, for appellee.

CARTER, J., delivered the opinion of the Court.

The appellee Joseph W. Lewis was granted a divorce a mensa from the appellant Lura J. Lewis by Judge James S. Getty in the Circuit Court for Allegany County on the grounds of desertion. The wife appealed from this judgment.

## FACTS

The evidence established that the parties were married on September 6, 1969, after a courtship of seven years. They separated on December 21, 1969. The husband was 64 years of age and the wife 52 at the time of their marriage. Both parties had previous marriages which terminated in the death of their respective spouses. The husband had three married children and the wife had a teenage daughter living with her. The husband respected a promise to his deceased wife that he would not marry until all their children were married. The last child married in June, 1969.

The evidence presented by the husband consisted of the testimony of his clergyman, his three children, and himself. He testified that it was well understood between

him and the appellant prior to the marriage that they would live at her home in Eckhart, Maryland, temporarily immediately following the marriage and would thereafter live at his home in Cumberland, Maryland. If the marriage worked out, he intended to eventually buy a modern home in LaVale, Maryland, which is a suburb of Cumberland. He further testified that after the marriage there was considerable dissension between him and his wife concerning money matters and that she refused to move to his home in accordance with their pre-marital agreement because she did not like the location and claimed the rooms were too small. The friction between them continued to build until the climax was reached on December 20, 1969, when she told him to leave her home. Accordingly, he did leave but returned in about two weeks with his children in an attempt to effect a reconciliation. He was unsuccessful. Reverend Vespa, who performed the marriage ceremony in the husband's home, inquired immediately after the ceremony where the couple expected to live. The appellee informed him that they were to live in his home. The minister then invited both of them to attend his church. This they both agreed to do. Mrs. Joanne Reckley, Lonnie Lewis, and Ronald Lewis, children of the husband, all testified concerning the discussions during the conference held at the appellant's home about two weeks subsequent to the separation. Mrs. Reckley stated that the appellant had informed her on this occasion that she was definitely not going to live in her husband's home and that the marriage was not successful. Mrs. Reckley further stated that prior to the marriage the appellant had informed her that if the appellee wished to live in his home, it was alright with her but she would like some improvements made to the kitchen. Lonnie Lewis testified that after he himself married in June, 1969, he and his wife had moved into his father's home with the understanding that such arrangement was temporary and that he would vacate within a week or two after notice from his father to do so. He further stated that on the day of the separation

his father had telephoned him from the appellant's home informing him that his wife had ordered him to get out and he had overheard the appellant say over the telephone on that occasion, "Yes, get your stuff and go!" Ronald Lewis testified that on the occasion of the conference the appellant emphatically rejected the idea of her living at his father's home and rejected the idea of his father living in her home in Eckhart. At that time the appellant also said her husband was just too tight and that the marriage would not work.

The appellant testified that it had been agreed between the parties prior to the marriage that her husband was to purchase a new home at a cost of $20,000 to $25,000 and that she had never at any time agreed to live in his home. She stated that after the marriage there were disagreements between her and her husband over money matters, that he refused to sleep with her, and that he finally left her home on December 20th of his own volition. She further stated that her husband had never requested her to live in his home. She also stated that he had never made an offer of reconciliation. She denied there had been any understanding prior to the marriage or in the presence of the minister that she and her husband were to live in his home. The appellant's 19 year old daughter testified that prior to the separation there had been numerous arguments between them over money matters. She had overheard arguments in which the husband had told her mother that he could legally require her to live in his home. She also testified that her mother had not ordered her husband to leave her home.

## THE LAW

The general rule that the husband as the head of the family has the right to select the marital domicile and the refusal of his wife to join him without good cause constitutes desertion on her part, was adopted by the Court of Appeals in *Hoffhines v. Hoffhines*, 146 Md. 350 (1924). It was reaffirmed by that Court in *Sewell v. Sewell*, 218 Md. 63 (1958). This Court has not previously

had occasion to consider the rule since acquiring jurisdiction in divorce matters.

The general rule is set forth in 24 Am. Jur. 2d Divorce § 122 page 281 as follows:

> "As between husband and wife, the husband must provide a home for the family and has the right, acting reasonably, to choose the place where the family shall reside. It is, in general, the duty of the wife to submit to such determination. Her refusal, without good reason therefor, to accompany the husband to the home which he selects and provides, will constitute a desertion by her. * * *"

The Court of Appeals adopted this general rule in *Hoffhines v. Hoffhines, supra.* The Court said at page 357:

> "The general rule, supported by the great weight of authority, is that the husband has the right to determine the domicile of himself and family, and that the wife is compelled to accept as her domicile the place so selected and maintained by her husband. This right is correlative with the husband's duty to provide for the support and maintenance of his wife and family, and if the wife refuses to accompany her husband and live with him in the home provided by him, without sufficient cause, hers is an act of desertion."

In *Schwartz v. Schwartz,* 158 Md. 80 (1930) the Court held that where the domicile was selected under circumstances showing an ultimate objective on the part of the husband to live separately from his wife and was therefore not made in good faith, the wife's refusal to follow her husband did not constitute desertion on her part. In *Bennett v. Bennett,* 197 Md. 408 (1950) the Court held that the wife was not required to follow her hus-

band where the wife had good cause to refuse. Here the Court said at page 412:

"\* \* \* A wife is not obliged to follow her husband unless he requests her to do so and such request is made in good faith, and the change of domicile would not impair her health or safety or unreasonably interfere with her comfort. \* \* \*"

In *Sewell v. Sewell,* 218 Md. 63 (1958) the Court reaffirmed the rule set forth in *Schwartz* and *Bennett* for determining the legal obligation of the wife to follow her husband in his selection of the marital domicile and further held that the request by the husband must be corroborated under the requirements of *Md. Code* Art. 35 § 4. In so holding the Court said at page 69:

"\* \* \* Before the wife's failure to follow the husband to a new domicile selected by him can serve as the basis for a finding that she has deserted her husband, a request that she join him \* \* \* must be corroborated. \* \* \*"

The Court further held in *Sewell* that where the divorce was contested without any likelihood of collusion as is the situation in this case, slight corroboration was sufficient.

### APPLICATION OF THE LAW TO THE FACTS

The appellant contends the evidence fails to show any specific request made by her husband to her that their marital domicile be established at his home. On this point the record shows the husband testified that his wife had repeatedly refused to move to his home, that his desires to move there had been well known to his wife, and that there had been a pre-marital understanding between him and his wife that they would live at his home soon after the marriage. His daughter and son Ronald testified that at the conference held at the wife's home the matter of the appellant moving to her husband's home had been fully discussed. At that time the

appellant said she would not live in her husband's home, that her husband could not live in her home in Eckhart, and that the marriage would not work. The husband's minister testified the wife agreed in his presence that she and her husband were to live in her husband's home in Cumberland after the marriage. We conclude, therefore, that the evidence was abundant that the husband had requested the appellant to live with him in his home and that she had refused to do so. Furthermore, his testimony in respect to the request and the wife's refusal was fully corroborated by the testimony of his clergyman and his children.

The only evidence tending to establish the unsuitability of the husband's home was the wife's complaint that the rooms were too small, particularly the kitchen and that she would not like to live in South Cumberland. The appellant's statement about the size of the rooms and the location of the home is a subjective conclusion reflecting only her personal taste, and not going to establish an adverse effect upon her health or well being. Under these circumstances, it is an elementary rule of evidence that her statement has no probative force. (See *Upton v. United Rwys.*, 136 Md. 212, 218; *Livingston v. Safe Deposit and Trust Company*, 157 Md. 492.)

The effort of the husband to effect an adjustment of the differences between him and his wife two weeks after the separation with the assistance of his children clearly supports the husband's contention that the request to live in his home was made in good faith and not as an excuse to bring about a break-up of the marriage.

We conclude therefore that Judge Getty was not clearly in error in finding 1) that the husband had requested his wife to change her domicile to his home, 2) that the wife refused her husband's request, 3) that his request and her refusal were corroborated, 4) that the husband's request was reasonable and would not have adversely affected the wife's health or safety or unreasonably interfered with her comfort, and 5) that the husband's re-

quest was made in good faith. We further conclude that on the basis of these findings of fact, the trial court was correct in holding as a matter of law that the wife was guilty of desertion and in granting the husband a divorce a mensa on this ground.

In so holding this Court follows the principles enunciated in *Hoffhines, Schwartz, Bennett,* and *Sewell* in respect to the conditions under which a wife is obligated to follow her husband in his selection of the marital domicile.

*Decree affirmed; appellee to pay costs.*