## THURLOW v. THURLOW

[No. 84, October Term, 1956.]

224

Decided *February 12, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*William D. Macmillan, Jr.,* for appellant.

*Frank Petro* and *Mary Arabian,* for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Christine E. Thurlow, appellant, from a decree granting her husband, Herman B. Thurlow, appellee, a divorce *a mensa et thoro.*

The parties were married on November 10, 1945. Each had been previously married. As a result of the previous marriages appellant had a daughter and appellee two sons. No children have been born as a result of this marriage. Since 1945 they have lived in Baltimore City where the appellee is employed by the United States Post Office. The daughter of the appellant and the two sons of the appellee lived with the parties until the marriage of appellant's daughter when she left to make her home with her husband. The appellee's older son has also married and has his own home. The appellee's younger son, Leo, lived with the parties at the time of the separation.

On September 15, 1955, the appellee filed a bill of complaint against the appellant charging that she had deserted and abandoned him and prayed for a divorce *a mensa et thoro.* In her answer the appellant neither admitted nor de-

nied that she deserted her husband. After testimony taken in open court the chancellor awarded the appellee the decree prayed for. From that decree the appellant appeals.

The testimony was first taken on January 17, 1956. The complainant, appellee, testified as to the marriage, his employment, that he was fifty-two years of age, and had been employed by the Government for twenty-one years. Before he married the appellant he told her that after they were married she could not work, as his children needed a mother. She stopped work for only about two weeks and his children "had to bring themselves up" while she was working. In February, 1955, he had an argument with his wife about his stepdaughter's relations with a man other than her husband. After April, 1955, his wife stayed with him only about three nights as she was staying at her daughter's house to prevent trouble between her daughter and the daughter's husband. He later tried to get the appellant to come back and she promised to do so. When she did return she told him that she would stay if he would sign an agreement to keep his boy out of the house, which he would not agree to do. She left on July 7, 1955, and has not been back to live with him since. When asked by the trial judge if there was any chance of their getting together the appellee replied that he had no faith in his wife. He said she would not wash or cook for him. He never struck or pushed her, and did not tell her to get out of the house on July 7, 1955.

The appellant testified that she went back to work because she thought the money would "help her husband out", and maybe she spent the money on the children. She said she called him on the telephone three times in an effort to go back to him but he would not talk to her. She went to see him one evening and wanted to shake hands and he told her he did not need a wife. On the night she left, her daughter came to see her and asked her to go to the doctor with her. Her husband objected to her going and they had an argument. He told her to get out and go live with her daughter and pushed her out of the basement kitchen, up the basement stairs, and told her to get out and stay out, which she did. Sometimes he got mad and pushed her and she pushed him

back. He was a good husband to her "except for times when he blew his top". Most of the arguments were over her daughter. She admitted that at one time he asked her to come back to him. When asked if she would be willing to go back to her husband, she answered: "I would go back, if he would want me."

Mrs. Herman E. Thurlow, the daughter-in-law of the appellee, testified that the night the appellant left, the appellee, did not want her to go. Leo Thurlow, the son of the appellee, testified that his stepmother told his father that she was going to leave to live with her daughter because she needed her. After his stepmother left on July 7th he heard his father ask her to come back. She did not do it because she did not want to leave her daughter and her brother.

The appellee offered in evidence a letter written by the appellant to him and mailed July 20, 1955, in which she stated, among other things: "I want half of the house either one or alimony from you, let Leo give me the things that belong to me. I dare you to say one word to me and I will finish him." After the taking of testimony on January 17, 1956, the chancellor decided to hold the case *sub curia* in the hope that a reconciliation might be effected.

Testimony was taken again on April 30, 1956. The appellee then stated that he never threatened his wife, never told her to leave the home, and never pushed her at any time. He said he and his wife had arguments about the conduct of his stepdaughter with a man other than her husband, his wife told him to "go to hell", and walked out and refused to come back to him. He admitted that one time she wrote to him that, if he would take her back, she would come. She wrote him other letters criticising him severely. After the second hearing the chancellor filed a memorandum in which he said that throughout the hearings on the case there were indications of the possibility of a reconciliation and he therefore held the matter *sub curia* for several months. Although he was inclined to believe that the reconciliation of the parties was not beyond the realm of possibility, nevertheless it was evident that such reconciliation could not be effected at that time; that he was obliged to find as a matter of fact that the

appellant voluntarily and without just cause left the home which she had occupied with her husband; that there had been no cohabitation of the parties since her departure; that the appellee on at least one occasion attempted to persuade his wife to return to her home but she failed to do so and continued to reside with her brother and her married daughter; that he had some doubt as to whether the appellant fully comprehended the possible consequences of her actions at the time she left her husband, but nevertheless her act of desertion was clearly established; and that he had no alternative but to grant the prayers of the complainant, appellee.

Of course, the chancellor had the opportunity to observe the appearance and demeanor of the witnesses, their manner of testifying, and the atmosphere of the trial. In a divorce case this is very important in reaching a correct and just conclusion.

The appellant argues that it was not proven that there was no reasonable hope or expectation of reconciliation. Code, 1951, Article 16, Section 33, provides, among other causes for a divorce *a vinculo matrimonii*: "* * * when the court shall be satisfied by competent testimony that the party complained against has abandoned the party complaining, and that such abandonment has continued uninterruptedly for at least eighteen months, and is deliberate and final, and the separation of the parties beyond any reasonable expectation of reconciliation; * * *." Code, 1951, Article 16, Section 34, lists as one of the causes for a divorce *a mensa et thoro* "abandonment and desertion". There is no provision in the latter section that it must be beyond any reasonable expectation of reconciliation as in the former section. In *Miller v. Miller,* 153 Md. 213, 219, 138 A. 22, it was said: "Abandonment and desertion, as a ground for divorce *a mensa,* contain two inherent affirmative elements: First, cohabitation ended; and second, the offending party's intention to desert. To entitle a party to a divorce *a vinculo* on this ground, in addition to the two above named elements, the court must be satisfied by competent testimony that such abandonment has continued uninterruptedly for at least three years and is deliberate and final, and the separation of the parties beyond

any reasonable expectation of reconciliation." *Kruse v. Kruse,* 183 Md. 369, 373, 37 A. 2d 898. The Code qualification that a divorce *a mensa et thoro* "may be revoked at any time thereafter by the court granting the same, upon the joint application of the parties to be discharged from the operation of the decree", makes provision for future reconciliation. Therefore, it does not appear that it was necessary for the chancellor to find that the abandonment and desertion by the wife were without reasonable hope or expectation of reconciliation.

The appellant further contends that when she left the appellee she never intended to remain away from him permanently. As to abandonment and desertion as a ground for a divorce *a mensa et thoro* it was said in *Mower v. Mower,* 209 Md. 413, 417, 121 A. 2d 185: "In order to constitute abandonment and desertion as a ground for divorce, there must be a voluntary separation of one spouse from the other, or the refusal to renew a suspended cohabitation, without justification either in the wrongful conduct or the consent of the other. *Crumlick v. Crumlick,* 164 Md. 381, 165 A. 189; *Miller v. Miller,* 185 Md. 79, 84, 42 A. 2d 915." Abandonment and desertion as grounds for a divorce *a mensa et thoro* contain two elements. First, cohabitation ended and, second, intention to desert. These two elements need not necessarily be identical in their commencement. *Hubbard v. Hubbard,* 127 Md. 617, 620, 621, 96 A. 860; *Coleman v. Coleman,* 188 Md. 203, 207, 51 A. 2d 673. Although the chancellor expressed some doubt as to whether the appellant fully comprehended the possible consequences of the desertion of her husband, he found at the time he signed the decree that such desertion was clearly established.

The appellant further contends that the appellee refused to renew cohabitation with her. Of course, as has been stated many times by this Court, if one spouse leaves the other without cause, as in the present case, and repents and proposes to renew the cohabitation and the other party refuses, it constitutes desertion by the one refusing from the time of the refusal, provided the offer to return is made in good faith, is free from improper qualifications and conditions, and is really intended to be carried out in accordance with the

performance of the duties and obligations of the matrimonial cohabitation. *Zukerberg v. Zukerberg,* 188 Md. 428, 433, 434, 53 A. 2d 20, and cases there cited. The appellant's statement on the witness stand that she would be willing to go back to her husband if he wanted her came too late to be seriously considered and the chancellor was justified in believing that it was not sincere. *Simmont v. Simmont,* 160 Md. 422, 432, 153 A. 665; *Kirkwood v. Kirkwood,* 165 Md. 547, 553, 554, 170 A. 180; *Dunnigan v. Dunnigan,* 182 Md. 47, 51, 31 A. 2d 634; *Fischer v. Fischer,* 182 Md. 281, 292, 34 A. 2d 455. As to the appellant's offers of reconciliation, there is ample evidence from which the chancellor could have concluded that they were not made in good faith as there was testimony that such offers were made under conditions which the appellee was not bound to accept. Also, from the memorandum filed by the chancellor, he evidently found that the appellee at one time attempted to persuade the appellant to return to her home but she would not do so.

We cannot find that the chancellor was clearly wrong in the facts found by him. *Miller v. Miller,* 204 Md. 509, 512, 104 A. 2d 921. The decree will be affirmed.

*Decree affirmed, costs to be paid by the appellee.*